[CHAMBERSBURG, OCTOBER 31, 1828.]

## STUMP and others *against* FINDLAY and others.

### IN ERROR.

Devise "to A. during his natural life, and, after his decease, if he shall die leaving lawful issue, to his heirs, as tenants in common, and their respective heirs and assigns for ever; but, in case he shall die without leaving lawful issue, then to B., the brother of A., to hold to him, his heirs and assigns for ever:" *Held,* that A. took an estate for life; that A's. issue, as tenants in common, and B. took, respectively, contingent estates in remainder, but one of which remainders could ever become vested; and, that neither of these, remainders could become vested, till the death of A.

In a common recovery, the tenant to the *præcipe* must be tenant by a *legal* title. Where, therefore, a recovery was suffered, and the title of the tenant to the *præcipe* rested only in articles of agreement: *Held,* that the recovery was void.

A common recovery, whether it is valid or void, works a forfeiture of the particular estate. Where A. had an estate for life, and the issue of A., as tenants in common, had contingent, concurrent estates in remainder, and a recovery was suffered by A. of the whole estate: *Held,* that, although the recovery was void, for want of a good tenant to the *præcipe,* the estate of A. was forfeited by the recovery, and the contingent remainders of his issue were consequently destroyed.

ERROR to the Court of Common Pleas of *Franklin* county.

*John Findlay,* *Samuel Findlay, John Palmer,* and *Mary,* his wife, who was formerly *Mary Findlay,* the plaintiffs below, and defendants in error, brought an action of ejectment for one hundred and thirty-two acres and ninety-nine perches of land, against *John Stump, John Myers,* and their tenant, the defendants below, and plaintiffs in error. The jury found a verdict for the plaintiffs below.

The title of the plaintiffs below was as follows: In 1765, *John Findlay,* Sen. the father of the plaintiffs below, claimed five hundred acres of land, of which the premises in question are a part, under a warrant to *John Kerr,* for one hundred acres, on which warrant, a survey, including the greater part of the land thus claimed, appeared to have been made by *Samuel Lyon,* then an assistant to the deputy surveyor. Of this survey, a rough draft, bearing no date, nor reference to any authority or office title, had been found in the office of the surveyor, some time before the trial in the court below, but was subsequently lost.

In 1768, *John Findlay,* Sen. conveyed two hundred and eight acres of this tract to his son *James,* and in 1783 he devised the

(Stump and others *v.* Findlay and others.)

residue, including the premises, as follows:* "I give and bequeath to my son, *John Findlay,* (the father of the plaintiffs below,) all that plantation and tract of land whereon I now dwell, together with the appurtenances, to hold to him, the said *John Findlay,* during his natural life. And, after my son *John's* decease, if he shall die leaving lawful issue, I give and devise the same to his heirs, as tenants in common, and their respective heirs and assigns for ever. But, in case my said son *John* shall die without leaving lawful issue, I give and devise the same to my son, *James Findlay,* to hold to him, his heirs and assigns, for ever."

*John Findlay,* Sen. died in 1783, and *John Findlay,* the devisee above named, and father of the plaintiffs below, died in 1801.

The defendants below claimed under the following title. In 1788, *James Findlay,* the son of *John Findlay,* Sen. obtained a warrant for two hundred acres, in the name of his own son, *John Findlay,* the second, and in 1790 he had a survey of one hundred and thirty-two acres, and ninety-nine perches, the premises in question, made by *Matthew Henderson;* against the acceptance of which, *John Findlay,* the devisee, entered a *Caveat,* in 1791. In 1790, a re-survey was also made by *Henderson,* on the warrant to *John Kerr,* in 1749, of two hundred and fourteen acres, and some odd perches; of which tract the plaintiffs below were now in possession, and which, with the premises in question, made the tract of three hundred and forty-seven acres and nineteen perches, mentioned hereafter.

In 1793, *John,* the devisee, entered into articles of agreement with his brother *James,* and his nephew, *John Findlay* the second, in which he declared, that he claimed the land devised by the will of his father, for the purchase of the premises in question, and he afterwards received, in the same year, conveyances of the premises from both of them. In 1794, *John,* the devisee, conveyed eleven and a half acres of the premises to *Myers,* one of the defendants below, and plaintiffs in error.

In *August,* 1797, articles of agreement were entered into between *John Findlay,* the devisee, and *George Hetich,* and *Samuel Riddle,* for the conveyance of the remainder of the premises. In *December,* 1797, a common recovery, with double voucher, was suffered of the premises in *Franklin* county, in which *Joseph Parks* was demandant, *Hetich* and *Riddle* were tenants, *John Findlay,* the devisee, was first vouchee, and *Yost Biddle* second vouchee. In *April,* 1798, *Parks* conveyed the premises to *John,* the devisee, in trust, to convey the same to *Hetich* and *Riddle,* and on the same day a conveyance was accordingly made to them by the said devisee. In *December,* 1798, a patent was procured by *Hetich* and *Riddle,* covering the tract thus conveyed to them, and in *March,* 1799, *Hetich* and *Riddle* conveyed one hundred and

---

* Vide, a question on the construction of this will, *Findlay's Lessee* v. *Riddle,* 3 *Binn.* 139.

(Stump and others *v.* Findlay and others.)

twenty-one acres, the aforesaid remainder of the premises, to *Stump,* one of the defendants below, and plaintiffs in error.

On the trial, the plaintiffs below, after having given evidence that the draft of the survey made by *Samuel Lyon* had been found in the office of the surveyor, and had been subsequently lost, offered to give parol evidence of its contents, by *Archibald Fleming,* Esq. the deputy surveyor. The defendants objected, but the court admitted the evidence, and signed a bill of exceptions. The admission of this evidence was the *first* error assigned.

The court below, in their answers to some of the points proposed by the counsel, charged the jury as follows: " The plaintiffs' claim and title appear to be merely equitable; a settlement right only. The draft is not evidence of title in the plaintiffs to the land, in the possession of the defendants; nor is it a survey by the proper officer, on any warrant. It appears, at best, to be a mere private survey, and circumscription of boundary; which, if known to the neighbourhood, and claimed by right of settlement, and such settlement were duly continued, would, at least after the act of assembly, allowing four hundred acres to be surveyed on warrants, and provided the boundaries were reasonable, give an equitable title to the three hundred and forty-seven acres, and nineteen perches." This was the *second* error assigned.

The court also charged the jury: " There is nothing in this case which calls upon the jury to presume any thing for, or any thing against, the common recovery.

" The regularity of the common recovery, and of the proceedings necessary to constitute it, does not appear to be called in question by the plaintiffs.

" The estate of *John Findlay,* the devisee, under his father's will, was not an estate tail, but an estate for life only; and the estate in remainder of the plaintiffs is not barred by the common recovery." This was the *third* error assigned.

The case was twice argued before this court; the second argument being confined to the *third* error.

*G. Chambers,* and *J. Chambers,* for the plaintiffs in error.

1. The admission of the witness, to prove the contents of the draft, is not warranted by any decision of the court. But the draft itself, if produced, would not have been evidence. It did not appear to have been the official act of any deputy surveyor, nor to represent any survey made on the ground. It had no date; it recited no warrant, or other authority, under which it was made. It furnished no evidence by whom it was made, nor that any surveying fees had been paid. *Miller* v. *Carothers,* 6 *Serg. & Rawle,* 215.

2. The draft, if evidence of any thing, was evidence of a survey. *John Findlay,* Sen. being the owner of *Kerr's* warrant for one hundred acres, his title was by warrant, and not by settlement. *Bonnet's Lessee* v. *Devebaugh,* 3 *Binn.* 191. The court erred also in charging, that more than three hundred acres could be taken

(Stump and others *v.* Findlay and others.)

under a settlement right.  The *custom* was, to take three hundred acres, and no more. *Davis's Lessee* v. *Keefer*, 4 *Binn.* 161.  The owner of an improvement right might take three hundred acres, or *as much less* as he pleased.  *Gordon* v. *Moore's Lessee*, 5 *Binn.* 136.  *Ellis* v. *Different Agents*, 2 *Smith*, 167.  A settler is entitled to three hundred acres only, and cannot claim ten per cent. additional, if there is any interfering right.  By the act of the 1st of *April*, 1784, *sect.* 4, four hundred acres might be taken on a warrant. *Act 21st December*, 1784. *Act 3d April*, 1792, *sect.* 3.

3. The court erred, in charging, that the estate in remainder of *John*, the devisee's children, was not barred by the common recovery.  The case of *Findlay* v. *Riddle*, 3 *Binn.* 139, we conceive, decides this point.  If the remainder vested in the son of *John Findlay*, the devisee, who was born before the recovery, and that child had died during his father's life, the remainder of *James Findlay* would have been defeated, contrary to the devisor's intent.  A fee cannot be limited on a fee, at common law.  But there may be several contingent estates in fee, one of which may become vested by the occurrence of a particular event, and then all the others are destroyed. *Fearne*, 372, 373. *Dunwoodie* v. *Reed*, 3 *Serg. & Rawle*, 435. *Abbott* v. *Jenkins*, 10 *Serg. & Rawle*, 296. Here, the remainders were contingent until the death of *John*, the devisee; and were barred by the common recovery, suffered in *December*, 1797. 1 *Salk.* 229. *Loddington* v. *Kime*, *L. Ray.* 203. 2 *Black. Comm.* 171.  The proceedings in the recovery may be supported, according to the laws of *Pennsylvania*.  The articles of agreement between *John Findlay*, the devisee, and *Hetich*, and *Riddle*, gave them an estate, which, in *Pennsylvania*, may be regarded as the legal estate.  But, if there was error in the recovery, it was good till reversed, and seven years having elapsed, it cannot now be reversed. *Act of the* 13th *of April*, 1791, 1 *Sm. Laws*, 205, *note.* 3 *Sm. Laws*, 34.  The roll of the recovery declares a writ of seisin to have been issued, and the sheriff returned, that he had delivered seisin.  The recovery here wrought a forfeiture, although it might not bar a tenancy in tail. 4 *Cruise*, *Recovery*, *c.* 3. 1 *Cruise*, 94, *Estate for Life*, *s.* 99.  It is a forfeiture, when it is impliedly admitted in a court of record, that the reversion is in a stranger. 2 *Bac. Abr.* 507, 4 *Cruise*, *Recovery*, *c.* 12. *s.* 1.  So, where a tenant for life claims the inheritance. *Co. Litt.* 252, *a.* 3 *Bac. Abr.* 570. 4 *Cruise*, *Title*, 36. *c.* 12, 31. 2 *Leon.* 66. 4 *Leon.* 132. *Coventry on Recoveries*, 53. *Willes*, 343. A fine, although void, works a forfeiture. 4 *Com. Dig. Forfeiture*, *A.* 2. 4 *Cruise*, 504. *Lyle* v. *Richards*, 9 *Serg. & Rawle*, 329.

*Dunlop* and *M'Cullough*, for the defendants in error.

1. The original draft was evidence, and was proved to have been lost. *John Findlay*, Senior, was assignee of *Kerr's* warrant, for one hundred acres; and the draft was some evidence of a survey on that warrant. *Boyles* v. *Johnston's Executors*, 6 *Binn.* 126.

(Stump and others *v.* Findlay and others.)

*Sproul* v. *Plumsted's Lessee*, 4.*Binn.* 189. *Miller* v. *Carothers*, 6 *Serg. & Rawle*, 215. *Leazure* v. *Hillegas*, 7 *Serg. & Rawle*, 313. *Hoover* v. *Gonzalus*, 11 *Serg. & Rawle*, 314.

2. A settlement right was not limited to three hundred acres, after it was allowed to take a warrant for four hundred acres. A settler, by circumscribing his claim by an unofficial survey, may gain a title by his settlement right, if the quantity be no more than the law allows. *Gordon* v. *Moore's Lessee*, 5 *Binn.* 136. But, if this was error, it was not injurious to the defendants below, and is, therefore, no ground for reversing the judgment. *Gibbs* v. *Cannon*, 9 *Serg. & Rawle*, 202. *Graham* v. *Moore*, 4 *Serg. & Rawle*, 467. A tenant for life cannot set up an outstanding title in a third person, against the reversion. *Van Horn* v. *Fonda*, 5 *John. Ch.* 388. *M'Pherson* v. *Cunliffe*, 11 *Serg. & Rawle*, 427. *Caufman* v. *Presb. Congreg.* 6 *Binn.* 59.

3. It is admitted, that the estate of the plaintiffs below was originally a contingent remainder, but it became vested on the birth of the eldest son of *John Findlay*, the devisee, who was born before the recovery was suffered; and it afterwards opened, to let in the subsequent children, as tenants in common with the eldest. 2 *Black. Comm.* 169. *Cruise, Remainder*, c. 1. *ss.* 32, 45. A devise to one and his sons, vests when a son is born. *Fearne*, 232, 241. 1 *Ld. Raym.* 208. Here, the word, issue, means children. *Findlay's Lessee* v. *Riddle*, 3 *Binn.* 147. *Dingley* v. *Dingley*, 5 *Mass.* 537. *Wager* v. *Wager*, 1 *Serg. & Rawle*, 374. *Abbott* v. *Jenkins*, 10 *Serg & Rawle*, 296. 2 *Ves.* 610. *Cruise, Remainder*, c. 4. *s.* 24. If the devisee here had died, and left only grandchildren, they could not have taken, if the estate had not vested in their father. 1 *Serg. & Rawle*, 374. *Clark* v. *Baker*, 3 *Serg. & Rawle*, 486. *Geering's Lessee* v. *Shenton*, *Cowper*, 411. The courts lean in favour of vested remainders. 5 *Mass.* 537. 1 *Serg & Rawle*, 374, 381. *Doe* v. *Provoost*, 4 *John.* 61. *Cruise, Remainder*, c. 4. *s.* 24. 1 *Ld. Raym.* 203. 10 *Serg. & Rawle*, 296. Dying without lawful issue, means an indefinite failure of issue, when applied to real estate. 1 *P. Wms.* 667. *Cowper*, 410. 3 *Serg. & Rawle*, 477. But this is not such a recovery as will bar the contingent remainders. It was suffered in *December*, 1797, and *Hetich* and *Riddle* were not legal tenants to the *præcipe*. The deed from *John Findlay*, the devisee, to *Hetich* and *Riddle*, was not executed till *April*, 1798. When the recovery was suffered, their only title was under the articles of agreement. The tenant to the *præcipe* must be the tenant to the *legal* estate, at least before judgment is rendered on the recovery. *Cruise, Recovery*, c. 2. *ss.* 1, 16. 2 *Black. Comm.* 359. *Pigott on Recov.* 2d. ed. 28. *Cruise, Recovery*, c. 2. *s.* 1. *c.* 14. *s.* 16. There must be fifteen days between issuing and returning the writ of seisin, which is not the case here. Unless there be a writ of seisin, nothing is gained by the recovery. *Lewis* v. *Whitham*, 2 *Strange*, 1185. Unless the writ is good, there is no for-

(Stump and others *v.* Findlay and others.)

feiture of the life estate. 9 *Serg. & Rawle,* 347. *Swann* v. *Broom,* 3 *Burr.* 1596. 2 *P. Wms.* 177. 3 *P. Wms.* 363. Judgment in common recovery, not executed by writ of seisin, has no manner of·operation. *Cruise, Recovery, c.* 10. *s.* 16. *c.* 6. *s.* 3. *Warren* v. *Greenville,* 2 *Str.* 1129. 1 *Mod.* 117.' *Case of Lord Say and Seal,* 10 *Mod.* 40. *Bridges* v. *Duke of Chandos,* 2 *Burr.* 1065. *Lyle* v. *Richards,* 9 *Serg & Rawle,* 343. An entry is absolutely necessary to put an end to the estate. *Fearne,* 247, 323.

The opinion of the court* (DUNCAN, J. taking no part, having been counsel for the plaintiffs in error, and TOD, J. also taking no part, having ruled the cause below,) was delivered by

GIBSON, C. J.—The essential facts of the case are these: In 1765, *John Findlay* claimed five hundred acres of land, including the premises in dispute, on a warrant for one hundred acres; and had procured *Samuel Lyon,* an assistant of the deputy surveyor, to make a survey of his claim; a rough draft of which, without date, or reference to any authority, or office title, was found in the office of the deputy. In 1768 he conveyed two hundred and eight acres to his son *James;* and, in 1783 devised the residue to his son *John* for life, with concurrent contingent remainders to the issue of *John,* and their heirs, as tenants in common; and, in the event of *John's* leaving no issue, to *James,* in fee. The plaintiffs claim as the children of *John.*

The defendants claim paramount the will; and they also resist the title of the plaintiffs under the will, on the ground, that the contingent remainder limited to them, was barred by a common recovery suffered by *John,* the tenant of the particular estate.

The paramount title is this. In 1785, several years after the death of the testator, *James,* his son, obtained a warrant in the name of his own son, *John,* for two hundred acres, part of the land devised; and in 1790 had a survey of one hundred and thirty-two acres made on it, against the acceptance of which, *John,* the devisee, entered a *Caveat,* in 1791. But, in 1793, this same *John,* by articles, with his brother and nephew, in which he declares, that he claims the land, agrees to purchase their title for twenty pounds. Under this title, eleven acres are conveyed in 1794 to *Myers,* (one of the defendants,) in fee; and in 1797 the residue is articled, to be sold to *George Hetich,* from whom, after he had suffered the common recovery, whose effect on the contingent limitation to the plaintiffs forms the second branch of the inquiry, title is regularly deduced to *Stump,* another of the defendants; the other defendant is their tenant. The first question, therefore, is, whether a party, who claims under *John,* the devisee, can set up a paramount title, in opposition to the provisions of the will: And I am of opinion, he cannot.

---

* This opinion appears to have been drawn up for delivery at *September* Term, 1827, but, for some reason, was omitted in the publication of the decisions of that Term.

(Stump and others *v.* Findlay and others.)

I am at a loss to imagine a clearer case of election. In courts of law, as well as of equity, no one can claim under a deed, without claiming under the whole of it, or take one clause, and reject the rest; the whole must be confirmed, or the whole abandoned. Just so of a will. If the testator devise the estate of *Titius* to another, and give *Titius* a legacy, *Titius* shall not hold the estate, and claim the legacy; he shall not take a benefit under the instrument, without suffering the whole of it to take effect: And it is immaterial, whether the testator believed he had a right to dispose of the estate of *Titius*, or intended to assume an arbitrary power. If *Titius* will avail himself of his bounty, he shall not disappoint his will. 7 *Wils. Bac. app.* 445. 2 *Mad. Ch.* 40. With the exception of a single case, the doctrine in regard to wills, has been held as broadly as I have stated it, from *Noyes* v. *Mordaunt,* 2 *Vern.* 581, to the present day. In the excepted case, (*Forrester* v. *Cotten, Amb.* 388,) it is true, Lord Keeper HENLY expressed great doubt, whether such a condition (as he called it,) can be coupled with a partial estate, as the devise would be good, or otherwise, just as the devisee in remainder should submit to the will. I trust it will be considered no disrespect to say, the doctrine was then newly sprung up, and its principles were perhaps imperfectly explored; for it is certainly now held, that the equity, in cases of election, instead of being a condition, which, if not performed, induces a forfeiture, is to sequester the devised interest, till satisfaction be made to the disappointed devisee. 2 *Mad. Ch.* 42. And, beside, I take the principle in *Forrester* v. *Cotten* to have been since overruled. Such, then, being the rule, is the case before us within it? A testator devises an estate to his son for life, who enters, and enjoys the whole of it; but who, afterwards, acquires an adverse title to a part of it in fee; declaring, at the same time, that he already has a title, under the will. After this, will it be endured, that he shall set up this adverse title against the title of the testator? It would be a shame and a scandal if he could. It was his duty to perfect the testator's title, for the benefit of himself, and those in remainder, instead of colluding with an adverse claimant, who probably was his creature, to defeat it. The devise of the whole was in confidence, that the devisee would do no act to defeat the testator's intention, as to any part: and the devisee having elected to take under the will, shall not be permitted to claim in repugnant rights. *John,* the devisee, therefore, must be taken to have made the purchase in aid of his former title, and in trust for those beneficially entitled, under the limitations in the will.

This view of the first branch of the defence, supersedes all inquiry into the grounds of the first two errors; because, the title set up by the defendants, being the title of the plaintiffs, if not barred by the recovery, it is immaterial, whether there was an abstract error in admitting a witness to prove the contents of a survey, or in charging, that the draft was evidence of an equitable right, under

(Stump and others *v.* Findlay and others.)

the testator's settlement; and that he was entitled to more than three hundred acres. All this was obviated, by the fact, that there was an available title under the warrant and survey in the name of *John*, the son of *James;* and that the defendants would have been estopped from denying the title of the testator, were it otherwise.

Then, as to the effect of the common recovery. *John Findlay*, the devisee, having a son then living, entered into articles for the sale of the premises, to *George Hetich*, against whom, and *Samuel Riddle, Joseph Parks* brought a writ of entry; the tenants vouching *John Findlay*, and he vouching over the common vouchee, against whom judgment was rendered by default. The demandant then conveyed to *John Findlay*, in trust, for *Hetich* and *Riddle*, from whom the defendants regularly deduce their title; and the first objection by the plaintiffs is, that the recovery was void, for want of a good tenant to the *præcipe.*

It is an elementary principle that the party against whom the writ is brought, must, by right, or by wrong, have an estate of freehold at the time of the judgment. Here there was nothing but an agreement, and one which the tenant, not having paid the purchase money which was to precede the conveyance, had not even a right to have executed. In a case of this sort, there is no such thing as an equitable tenant to the *præcipe;* for although in an adversary proceeding, we will, to prevent a failure of justice, consider those things as already done which chancery would compel a party to do, there is no necessity for extending the rule to common recoveries, which are not adversary proceedings. Their effect in barring contingent remainders is exclusively technical, and *strictissimi juris;* and, as there are no equitable considerations to recommend them to indulgence, the tenant for life escaping personal chastisement only because there is no trust in the case to give a chancellor jurisdiction, (*Co. Litt.* 290, *b. Note,* 249,) the parties ought to be held closely to technical form. But even a conveyance would not have made the recovery lawful, as *John Findlay* was a bare tenant for life, and by the form of conveyance usual here, could have passed no greater estate than was in him; so, that by the statute, 14 *Eliz. c.* 8, the recovery would still have been void, for want of a subsequent estate of inheritance in the tenant. Something was said at the argument, of presuming a conveyance of an estate of inheritance from lapse of time; but, I believe, no case of the kind is to be found. After a very long possession, the surrender of a precedent lease for life, to enable a remainderman in tail to make a tenant to the *præcipe,* has been presumed; but never, after a lapse, as here, of only fifteen years. Something was also said about the recovery being good till reversed by writ of error. It is certain, however, that it may be abated by entry and plea, and consequently, in an action of ejectment; the law being so laid down both in *Booth on Real Actions,* 77, and *Pigot on Recoveries,* 156. The question, therefore, is, whether a void recovery, such as this, will bar a contingent remainder.

(Stump and others *v.* Findlay and others.)

A recovery produces such a bar by working a forfeiture of the particular estate. Previous to statute 32, *Hen.* 8, c. 31, a recovery barred even vested remainders, by enlarging the particular estate to a fee; in consequence of which, vested estates were turned to a right, and contingent ones irremediably destroyed. But by that statute, and 14 *Eliz.*, which has superseded it, a recovery, suffered by a bare tenant for life, is utterly void. Still, however, it was held, in *Pelham's Case*, 1 *Rep.* 15, to work a forfeiture of the particular estate, and consequently, the destruction of all remainders depending on it. It is said not to have produced that effect here, because it was void for want of *a good tenant to the præcipe.* But it would have been equally void *with* a good tenant to the *præcipe.* The objection would be unanswerable in the mouth of a tenant in tail, who can be only barred by a valid recovery; but, it is of no avail in the mouth of a contingent remainderman, where the particular estate is not an estate tail, because he can be barred by no recovery which *is* valid. In delivering the opinion of the judges in *Dormer* v. *Parkhurst,* 3 *Atk.* 135, Chief Justice WILLES said, there are many cases where an act may be void against another, and yet be a forfeiture to the person; and he gave, as an instance, the case of a copyhold tenant, a lease by whom is certainly void, but nevertheless a forfeiture: so in the case of a fine. Here the offence of the tenant of the freehold, consisted in suffering himself to be vouched without counterpleading the warranty; thus attempting, by matter of record, to convey a greater estate than was in him, the consequence of which is indisputably a forfeiture.

But as the tenant for life had a child born before the recovery was suffered, it is argued, that the remainder vested in such child, subject to open and let in afterborn children.

In cases where the remainder was expressly limited to *children,* such a construction has prevailed; and had the intention clearly been to vest the estate in the children of *John,* in any event, it would have prevailed here. After the devise to *John* for life, the words are: "and after my son *John's* decease, if he shall leave lawful issue, I give and devise the same plantation and tract of land to his *heirs,* as tenants in common, and their respective heirs and assigns, for ever. But in case my son *John* shall die without leaving lawful issue, I give and devise the same plantation and tract of land, to my son, *James Findlay,* to hold to him and his assigns for ever." The word heirs, is to be qualified so as to mean issue, it being plain from the context, that both these words were used in a sense, neither so extended as to amount to words of limitation, nor so restricted as to mean children. The general intent was, to give the estate to *James* in the event of *John's* leaving no descendant. But this intent would be frustrated by the death of a child in whom the estate vested, and who had died without issue in the life time of *John;* for after a vested estate in fee, no further limitation can take effect, but by way of executory devise. Where two contingent

(Stump and others *v.* Findlay and others.)

remainders in fee, depend on the same particular estate, both cannot take effect, as both depend on the same contingency, according to the happening of which, the one is to take effect in exclusion of the other. This is the familiar case of a single contingency with a double aspect. But the construction contended for, contemplates two distinct contingencies—the birth of issue, in whom the estate would vest in the life time of *John,* and the extinction of such issue, on which it would go over at his death. But the latter could, as I have said, take place only by holding the limitation to *James* to be an executory devise, which we cannot do, as there is a preceding freehold, on which it may depend. As, then, we have two contingent remainders, which depend on one contingency, and both cannot take effect, there is no way to give effect to the general intention of the testator, but to fix the time for the happening of the contingency at the expiration of the particular estate. The consequence is, I am bound to pronounce, that the plaintiffs are barred.

Judgment reversed.