FILED
United States Court of Appeals
Tenth Circuit

April 19, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

TIMOTHY WEBSTER,

       Defendant - Appellant.

No. 09-7080
(D.C. No. 09-CR-00009-JHP-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **KELLY**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Timothy Webster pled guilty to being a felon in

possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court

sentenced Mr. Webster to 60 months' imprisonment followed by 36 months'

supervised release. On appeal, Mr. Webster argues that (1) the district court

improperly imposed a two-level enhancement for obstruction of justice, and (2)

the district court improperly made an upward departure from the sentencing

guidelines for under-representation of criminal history. We have jurisdiction

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and affirm.

Background

On September 1, 2008, Dewayne Smith, Jr. called Mr. Webster's fiancee, Koeta Frost, at work and threatened her. 2 R. 41-42. Smith, the father of Frost's grandson, was having a financial dispute with Frost's daughter. 2 R. 41. Smith told Frost that she would have to give him the money he believed he was owed by Frost's daughter. 2 R. 41-42. He said that he would kill Frost if she did not give him the money. 2 R. 42-43. Frost called Mr. Webster to tell him about Smith's threats. 2 R. 43-44. Smith also called Mr. Webster several times on that same day to convey that he would kill Frost, her daughter, and Frost's grandson (his son) if he did not get his money. 2 R. 85-86.

During the last phone call between Smith and Mr. Webster, Smith threatened to "get [Mr. Webster] like [he] was going to get them." 2 R. 86. Mr. Webster collected his shotgun and drove to Frost's workplace. 2 R. 86-87. Mr. Webster testified that he did not intend to harm Smith, but that he wanted to protect Frost. 2 R. 87. He climbed into Frost's vehicle with the loaded shotgun and waited for Smith. 2 R. 87. Smith arrived about ten minutes later, and according to Mr. Webster, Smith was carrying a stick that was approximately two inches in diameter and five or six feet long. 2 R. 87-88, 112.

Mr. Webster admits that he exited Frost's vehicle with the shotgun in hand

and took two steps toward Smith as Smith neared the driver's side of the truck and drew the stick back. 2 R. 112-14. Mr. Webster told Smith to drop the stick. 2 R. 88. Smith got on his knees and started begging for his life. 2. R. 88. Mr. Webster claims that as he began to raise the shotgun toward Smith, the gun accidentally discharged. 2 R. 89-90. Smith said he was sorry, and Mr. Webster let him go. 2 R. 90. Witnesses stated that Smith did not have a stick during the incident. 2 R 127-29, 139-41. No stick was found at the scene. 2 R. 126.

Mr. Webster was charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). 1 R. 8. Without a plea agreement, he pled guilty to one count of being a felon in possession of a firearm. Aplt. Br. 2; 2 Supp. R. 1. The Presentence Report ("PSR") recommended a base offense level of 14 and a four-level increase for possession of a firearm in connection with another felony offense. 2 Supp. R. 5. The government requested an additional two-level increase for obstructing or impeding the administration of justice based on the government's contention that Mr. Webster's self-defense claim was false. 2 Supp. R. 15, 17. The government also moved for an upward departure pursuant to United States Sentencing Guideline ("U.S.S.G.") §§ 4A1.3(a)(1) and (a)(2)(E) based on Mr. Webster's prior similar conduct. 1 R. 10-15.

Both parties presented witnesses at the sentencing hearing. The district court applied the recommended four-level enhancement, finding by a

preponderance of the evidence that Mr. Webster had committed the felony of assault and battery with a dangerous weapon. 2 R. 168. The district court further found by a preponderance of the evidence that Mr. Webster had obstructed justice by urging that he had acted in self-defense and that the firing of the gun was accidental. 2 R. 169. Finally, the district court agreed—based on Mr. Webster's own testimony and other evidence of similar conduct—that Mr. Webster's criminal history category substantially underrepresented the seriousness of his criminal history and the likelihood that he would commit other crimes. 2 R. 171. Accordingly, the district court applied an offense level of 20 and a departure from criminal history category III to IV, resulting in a Guideline range of 51-63 months. 2 R. 170, 172. The court sentenced him to 60 months' imprisonment. 2 R. 177.

## Discussion

We review the district court's factual findings regarding obstruction of justice for clear error. United States v. Mares, 441 F.3d 1152, 1159-60 (10th Cir. 2006). "[T]o the extent the defendant asks us to interpret the Guidelines or hold that the facts found by the district court are insufficient as a matter of law to warrant an enhancement, we must conduct a de novo review." United States v. Scott, 529 F.3d 1290, 1300 (10th Cir. 2008) (citation, alterations, and internal quotation marks omitted).

When the sentence imposed is higher or lower than what the Guidelines recommend, we review the district court's decision to depart under a "unitary abuse of discretion standard," affording substantial deference to "factual questions," but applying "plenary review [to] questions that are in essence legal." United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1215-16 (10th Cir. 2008) (internal citations and quotation marks omitted).

A.    Obstruction of Justice

After receiving the PSR, Mr. Webster's counsel submitted a letter to the probation officer stating that Mr. Webster had acted in defense of himself and others. 2 Supp. R. 12-14. The government responded by arguing that Mr. Webster's self-defense claim was false and that making such a claim in writing to the probation office and the district court constituted obstruction of justice. 2 Supp. R. 17. The probation officer noted that despite Mr. Webster's self-defense/defense of others theory, he was not denying "the basic relevant conduct of discharging the firearm." 2 Supp. R. 23. The probation officer did not believe that Mr. Webster's assertions amounted to obstruction of justice. 2 Supp. R. 23.

At the sentencing hearing, Mr. Webster testified that (1) Smith had approached Frost's vehicle with a long stick; (2) he did not point the shotgun at Smith; and (3) the gun accidentally discharged. 2 R. 88-89, 111-16. After noting that this was the first time Mr. Webster had provided much of this information, the government argued that Mr. Webster's testimony contained "materially false

information," "if not perjury." 2 R. 155-56. The government requested an obstruction of justice enhancement. 2 R. 159.

Over Mr. Webster's objection, 2 R. 151-52, the district applied the enhancement, summarily noting:

> The defendant has cited self-defense in this case in regard to the discharge of the firearm at the victim. Further, he has denied the basic relevant conduct of discharging the firearm by his claim of accidental discharge. Therefore, the Court finds by a preponderance of the evidence that the defendant's assertion is obstruction of justice in this case.

2 R. 169.

U.S.S.G. § 3C1.1 provides for a two-level upward adjustment if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing" of the offense. United States v. Salazar-Samaniega, 361 F.3d 1271, 1275 (10th Cir. 2004). This includes "committing, suborning, or attempting to suborn perjury," "providing materially false information to a judge or magistrate," and "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. § 3C1.1 cmt. n.4; see, e.g., United States v. Cone, 203 F.3d 836 (Table), 2000 WL 107375, at *2 (10th Cir. Jan. 31, 2000). In order to use perjury as a basis for the obstruction of justice sentencing enhancement, the district court must determine that (1) Mr. Webster gave false testimony under oath, (2) concerning a material matter, (3)

- 6 -

and did so willfully, "'rather than as a result of confusion, mistake or faulty memory.'" United States v. Dazey, 242 F. App'x 563, 570-571 (10th Cir. 2007) (quoting United States v. Dunnigan, 507 U.S. 87, 94 (1993)).

The district court must explicitly specify the false statements it considered in imposing the enhancement. Id. (citing United States v. Hawthorne, 316 F.3d 1140, 1146 (10th Cir. 2003); United States v. Massey, 48 F.3d 1560, 1573 (10th Cir. 1995)). While the district court need not recite the alleged perjury verbatim, it should "'generally identify the testimony at issue . . . so that when we review the transcript we can evaluate the . . . findings of the elements of perjury against an identified line of questions and answers without having simply to speculate on what the district court might have believed was the perjurious testimony.'" United States v. Hawthorne, 316 F.3d 1140, 1146 (10th Cir. 2003) (quoting Massey, 48 F.3d at 1574). In addition, "[i]f a defendant objects to the obstruction-of-justice enhancement at sentencing, the district court 'must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice.'" United States v. Requejo, No. 09-8005, 2010 WL 446997, at *8 (10th Cir. Feb. 10, 2010) (quoting Dunnigan, 507 U.S. at 95).

Although greater specificity would have aided our review, the district court's findings taken in context are adequate to satisfy our requirements and are not clearly erroneous. A finding on the first element (making a false statement

under oath) is encompassed by the court's finding that Mr. Webster committed the felony of assault and battery with a dangerous weapon—a finding that is inconsistent with self-defense and accidental discharge of the firearm. See 2 R. 168; see also 2 R. 169-70 (district court noting that Mr. Webster had "falsely denie[d]" relevant conduct that the court had determined to be true). To be sure, the mere fact that the district court believed the other witnesses and evidence presented at the sentencing hearing and disbelieved Mr. Webster alone does not mean that Mr. Webster's testimony was perjurious—that it was material and willfully false.

The second element (materiality) is also present. Any information "that, if believed, would tend to influence or affect the issue under determination" is "material." U.S.S.G. § 3C1.1 cmt. n.6. An enhancement under § 3C1.1 is appropriate even if the perjurious testimony does not go to the underlying charge, if it is relevant to the issue being decided, in this case, whether a four-level enhancement for possession of a firearm in connection with another felony offense was appropriate. Had the district court believed Mr. Webster's testimony that he was acting in self-defense and that the shooting was accidental, this information would have surely affected the court's decision to apply the four-level sentencing enhancement.

The third element (intent) presents a closer question. The false testimony must be the product of willful intent, "rather than as a result of confusion,

mistake, or faulty memory." Dunnigan, 507 U.S. at 94.  The record does not suggest that the discrepancies between Mr. Webster's testimony at sentencing and the testimony and evidence presented by the government were the product of confusion, mistake, or faulty memory.  We believe that the district court implicitly found willful intent when it stated, "Based on the testimony and argument heard today, it's clear that the defendant is providing excuses for his conduct."  2 R. 170.  As noted by the dissent, the district court made this comment while explaining why it would not grant a reduction for acceptance of responsibility.  But this statement in context reflects the district court's belief that Mr. Webster was deliberately lying about acting in self-defense in an effort to avoid punishment for his actions.  In addition, "there is nothing in the record to suggest the district court would see the matter differently on remand."  United States v. Westover, 435 F.3d 1273, 1278 (10th Cir. 2006) (affirming an obstruction of justice enhancement).

In sum, we conclude that the district court's finding that Mr. Webster attempted to obstruct justice by falsely testifying about material facts was not clearly erroneous.

B.    Upward Departure for Under-Represented Criminal History

In a letter to the probation office, the government advised that an upward departure pursuant to U.S.S.G. §§ 4A1.3(a)(1) and (a)(2)(E) may be appropriate based on two separate shooting incidents outlined in the PSR.  2 Supp. R. 18.  Mr.

Webster was charged with shooting with intent to kill in 1987. 2 Supp. R. 8. According to the affidavit in support of an arrest warrant, Mr. Webster admitted shooting Dwight James three times in the chest and once in the back, fleeing the scene, and disposing of the weapon. 2 Supp. R. 22. The case was dismissed without prejudice. 2 Supp. R. 8. In 1994, Mr. Webster was charged with feloniously carrying a firearm. 2 Supp. R. 8. According to the affidavit in support of an arrest warrant, Mr. Webster, who was a convicted felon at the time, admitted to shooting Rodney Broades and gave investigating officers the weapon used in the shooting. 2 Supp. R. 20. Witness Vetecia Broades stated that Mr. Webster also pointed the gun at her at the scene and witness June Wafer saw Mr. Webster point the gun at Broades. 2 Supp. R. 20. This case was dismissed in the interests of justice. 2 Supp. R. 8.

During the sentencing hearing, Mr. Webster confirmed that he had shot Dwight James and Rodney Broades. Mr. Webster claimed that James had pulled a gun on him outside a club. 2 R. 79. He testified that he had shot James four times after James tried (and failed because of a problem with his gun) to shoot him. 2 R. 79. But he also testified that he had walked away from James after he saw the gun, went to the car to get a gun, and returned to the club with the gun to confront James. 2 R. 79, 99. Mr. Webster further testified that he shot Broades. 2 R. 80-81. He stated that he had been a security guard at a club and refused to let Broades enter the club with a gun. 2 R. 81. In anger, Broades drove by Mr.

Webster's house twice, firing shots at the house.  2 R. 81-82.  Later that evening, Mr. Webster and his friend were driving to get a drink and Broades jumped out from behind some bushes with a gun.  2 R. 82, 104.  Although Mr. Webster was not allowed to have a gun, he had bought one and was carrying it.  2 R. 82, 108.  He testified that, rather than driving away, he got out of the car with the loaded gun and fired at Broades before Broades could fire at him.  2 R. 82, 105-07.  Both charges were dismissed when the victims failed to show up to testify.  2 R. 101, 108.

The district court found that Mr. Webster had "established a pattern of reckless conduct with firearms beginning in 1980 through the present, thereby demonstrating an increased likelihood that defendant will commit other crimes with firearms."  2 R. 171.  It found that his past conduct was "similar to the relevant conduct that occurred in the instant case."  2 R. 171.  The court found by a preponderance of the evidence that "circumstances warrant departure from the advisory guideline range" and "defendant's criminal history is best represented by a criminal history category of four."  2 R. 172.

When reviewing departures, we consider four factors: "(1) whether the district court relied on permissible departure factors, (2) whether those factors removed a defendant from the applicable Guidelines heartland, (3) whether the record supports the district court's factual bases for a departure, and (4) whether the degree of departure is reasonable."  United States v. Robertson, 568 F.3d

1203, 1211 (10th Cir. 2009). Mr. Webster is challenging only the third factor. Specifically, he claims that the record does not support that his prior similar adult conduct was criminal. Aplt. Br. 17. As with all sentencing enhancements, the government bears the burden of proving by a preponderance of the evidence any findings necessary to support this upward departure. See United States v. Gambino-Zavala, 539 F.3d 1221, 1228 (10th Cir. 2008). We may rely on any undisputed portion of the PSR as a finding of fact. Robertson, 568 F.3d at 1212. While "bare reports of prior arrests" are precluded from consideration, the facts underlying arrests are "fair game" when ruling on an upward departure motion. Id.

With respect to both prior shooting incidents, Mr. Webster argues that he has raised "a substantial claim of self-defense which was neither addressed nor negated by the government's evidence." Aplt. Br. 19-20. He argues that an unconvicted criminal offense cannot be found unless his self-defense claim is disproved. Mr. Webster's characterization of the evidence raised in the sentencing hearing is not the one adopted by the district court. Mr. Webster's own testimony provided ample basis for the district court to conclude he was not acting in self-defense on these two occasions; he was the one who escalated the confrontations in both of these incidents. The district court found that Mr. Webster had "established a pattern of reckless conduct with firearms"—a crime in Oklahoma. See Okla. Stat. tit. 21 § 1289.11 (2008) ("It shall be unlawful for any

- 12 -

person to engage in reckless conduct while having in his or her possession any shotgun, rifle or pistol, such actions consisting of creating a situation of unreasonable risk and probability of death or great bodily harm to another, and demonstrating a conscious disregard for the safety of another person."). Implicit in this finding is a finding that the court did not believe Mr. Webster was acting in self-defense. As acknowledged by Mr. Webster, the district court was at liberty to disbelieve him. Aplt. Br. 19; United States. v. Tenorio, 312 F. App'x 122, 129-30 (10th Cir. 2009) (citing United States v. Virgen-Chavarin, 350 F.3d 1122, 1134 (10th Cir.2003), for the proposition that "[t]he district court itself is the factfinder at sentencing and may make all necessary credibility determinations."). We defer to the district court's credibility determinations. Virgen-Chavarin, 350 F.3d at 1134 (credibility determinations made at sentencing hearing are "virtually unreviewable on appeal"). Mr. Webster's contention that the district court lacked an adequate basis in the record for the upward departure under §§4A1.3(a)(1) and (a)(2)(E) is, consequently, without merit.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

- 13 -

09-7080, *United States v. Webster*

**HOLMES**, Circuit Judge, dissenting:

I write separately because I believe the district court committed reversible error by failing to make adequate findings for the obstruction-of-justice enhancement with respect to the third element of perjury—intent. I agree with the majority's conclusion that the district court adequately identified the statements at issue, and I recognize that, as a result, the district court is permitted to make "fairly conclusory findings that such testimony was false, material, and given with intent to commit perjury." *United States v. Massey*, 48 F.3d 1560, 1574 (10th Cir. 1995). Even assuming the district court made sufficient findings with respect to falsity and materiality, however, the district court failed to satisfy this minimal requirement regarding Mr. Webster's alleged willful intent to commit perjury. For this reason, I must respectfully dissent.

In applying the obstruction-of-justice enhancement over Mr. Webster's objection, the district court stated:

> The defendant has cited self-defense in this case in regard to the discharge of the firearm at the victim. Further, he has denied the basic relevant conduct of discharging the firearm by his claim of accidental discharge. Therefore, the Court finds by a preponderance of the evidence that the defendant's assertion is obstruction of justice in this case.

R., Vol. II, at 169 (Sentencing Hearing, dated Aug. 6, 2009). To use perjury as a basis for the obstruction-of-justice enhancement, the district court must determine that Mr. Webster gave "false testimony [under oath] concerning a material matter

with the *willful intent* to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (emphasis added). "[I]f a defendant objects to a sentence enhancement resulting from [his] . . . testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice . . . under the perjury definition [the Supreme Court] ha[s] set out." *Id.* at 95. "When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Id.* However, nothing in the district court's explanation addresses Mr. Webster's intent.

While acknowledging the limitations of the district court's findings, the majority "believe[s] that the district court implicitly found willful intent when it stated, 'Based [up]on the testimony and arguments heard today, it's clear that the defendant is providing excuses for his conduct.'" Maj. Op. at 9 (quoting R., Vol. II, at 170). In arriving at this conclusion, the majority appears to be tacitly relying on the reasoning of our decision in *United States v. Hawthorne*, 316 F.3d 1140 (10th Cir. 2003), which allowed for implicit findings concerning materiality.

In *Hawthorne*, we held that the district court had "implicitly found that Defendant's testimony about the voluntariness of his confession was material." *Id.* at 1146. We based this conclusion on the district court's statement that one portion of the defendant's testimony—regarding another drug dealer—did not

warrant the enhancement while his testimony regarding the voluntariness of his confession did. *Id.* The district court had explained that the testimony concerning the other drug dealer was "probably not particularly material here, although I believe that the defendant lied about it." *Id.* (internal quotation marks omitted). The district court made no similar finding with respect to the probable lack of materiality of the defendant's voluntariness testimony. *Id.* We therefore concluded that the district "court's distinction between the two areas of testimony establishes that it found the testimony about voluntariness to be material." *Id.*

Here, in contrast, the district court's comment about excuses (upon which the majority relies) was made in the context of the district court's refusal to grant Mr. Webster an acceptance-of-responsibility reduction and did not address whether Mr. Webster's statements were the product of willful intent. *See* R., Vol. II, at 170 (finding that Mr. Webster "should not receive a reduction for acceptance of responsibility" under the Guidelines because "it's clear the defendant is providing excuses for his conduct in this case and not affirmatively accepting responsibility for his actions."). Consequently, the district court's general statements about excuses do not amount to a finding—even an implicit one—that Mr. Webster had the requisite willful intent in giving the particular testimony that the district court identified as false.

The majority also notes that nothing in the record "suggest[s] that the discrepancies between Mr. Webster's testimony at sentencing and the testimony

and evidence presented by the government were the product of confusion, mistake, or faulty memory." Maj. Op. at 9. While this may be true, the district court never concluded as much in its findings as required by *Dunnigan* and *Massey*. Therefore, because I believe there is nothing in the record from which we may conclude that the district court made even implicit findings regarding Mr. Webster's intent, I would reverse and vacate the district court's sentencing order and would remand the case to the district court for it to make the appropriate findings concerning obstruction of justice in connection with Mr. Webster's resentencing. Given my view of the case, I have no occasion to opine upon the merits of Mr. Webster's challenge to the district court's upward departure. For the foregoing reasons, I respectfully dissent.