## THE BEAL LAW CONSTITUTIONAL.

[Before Judge John M. Cook, sitting in Guernsey County.]*

JOHN LLOYD v. JOSEPH B. DOLLISIN, SHERIFF.

Decided, 1902.

*The Beal Law—Not in Conflict with Section 26 of Article II, or Section 18 of Article I, or Section 11 of Article III of the Constitution—Contains no Unlawful Discrimination—The Feature as to Sale by "Wholesale"—Jurors Taken from the Whole County—What Shall Constitute Prima Facie Evidence of Legal Election—Distribution of Fines.*

1. The provisions of Section 26 of Article II of the Ohio Constitution, that general laws shall have a uniform operation throughout the state, does not make it necessary that the law shall operate uniformly upon every person and every foot of territory within the state; and the fact that Sections 4364-20, *et seq.*, known as the Beal Law, have no application to those portions of the state not within the limits of municipalities, does not bring them within this constitutional prohibition.

2. Nor does the provision of the Beal Law, which permits of a resubmission after two years of the question of the sale of intoxicating liquors in a municipality, render it possible to suspend the law within the meaning of Section 18 of Article I of the Constitution, which provides that the Legislature alone can suspend laws.

3. Nor is there an attempt to grant the pardoning power to the people, in contravention of Section 11 of Article III, by the permitting of a second election, for the fact that the second election was in favor of "the sale" would not absolve from an offense committed while the sale was prohibited.

4. Nor is there any violation of Sections 1 and 2 of the Bill of Rights or of the Fourteenth Amendment of the Federal Constitution in the discrimination that is made between persons living within and without municipalities, and between manufacturers selling at wholesale and dealers; and the provision as to sales by wholesale incapable of execution because of its indefiniteness.

5. There is no violation of the rights of one being prosecuted under this law in that he must be tried before a jury selected from the whole county, rather than from the municipality within which the offense was committed.

6. It is clearly within the power of the Legislature to provide as to

*Judge Cook was the only judge sitting at the hearing of this case.

what shall constitute *prima facie* evidence that the election under this law was legally held.

7. The disposition to be made of fines imposed has always been provided for by the General Assembly, as was done in connection with the Beal Law, and is a matter of no concern to one charged with violation of that law.

Cook, J.

In habeas corpus.

The objection made to the detention of plaintiff by the sheriff of Guernsey county is that the court has no jurisdiction for the reason that the act of the General Assembly by favor of which the affidavit was made is unconstitutional and that it is *too* indefinite and vague to be enforced. The act was passed April 3, 1902 (95 O. L., 87), and purports to take effect from the date of its passage and is known as the Beal Municipal Local Option Law.

A large number of objections are made by plaintiff: That it contravenes Section 26, Article II of the Constitution; that it contravenes Section 1, Article II; that it contravenes Section 18, Article I; that it contravenes Section 10, Article I; that it contravenes Sections 1 and 2 of the Bill of Rights; that the word "wholesale" is indefinite and vague; that the fines are improperly disposed of; and other objections that will be noted.

The questions made principally respect the Constitution of our own state and must therefore be considered and determined in the light of the decisions of our own state, and but little assistance can be derived from the decisions of other states, as the Constitutions of the different states differ very materially in their provisions upon the questions involved.

The first two objections may be considered together. Section 26, Article II, provides:

"All laws of a general nature shall have a uniform operation throughout the state; nor shall any act, except such as relate to public schools, be passed, to take effect upon the approval of any other authority than the General Assembly, except, as otherwise provided in this Constitution."

Section 1, Article II, provides:

"The legislative power of this state shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives."

Sections 4364-20a and 4364-20b, Revised Statutes (95 O. L., 87), are the sections of the Beal Law in controversy and provide as follows:

"Section 4364-20a. That whenever forty per cent. of the qualified electors of any municipal corporation shall petition council thereof for the privilege to determine by ballot whether the sale of intoxicating liquors as a beverage shall be prohibited within the limits of such municipal corporation, such council shall order a special election to be held in not less than twenty nor more than thirty days from the filing of such petition with the mayor of the municipal corporation or from the presentation of such petition to said council, which said petition shall be filed as a public document with the clerk of the municipality, and preserved for reference and inspection and which election shall be held at the usual place or places for holding municipal elections, and notice shall be given and the election conducted in all respects as provided by law for the election of members of the council of the corporation, so far as said law may be applicable. The result of such election shall forthwith be entered upon the record of the proceedings of the council of the corporation by the clerk thereof, and in all trials for violation of this act, the original entry of the record, or a copy thereof certified by the clerk of the corporation; provided that said record shows that a majority of the votes cast at said election was against the sale of intoxicating liquors as a beverage, shall be *prima facie* evidence that the selling, furnishing or giving away of intoxicating liquors as a beverage or the keeping of a place where such liquors are sold, kept for sale, given away or furnished, if such selling, furnishing or giving away or keeping such place occurred after thirty days from the day of holding the election, was then and there prohibited and unlawful.

"Section 4364-20b. And if a majority of the votes cast at such election shall be in favor of prohibiting the sale of intoxicating liquors as a beverage, then from and after thirty days from the date of holding said election it shall be unlawful for any person, personally or by agent, within the limits of such municipal corporation to sell, furnish or give away any intoxicating liquors to be used as a beverage, or to keep a place where such liquors are kept for sale, given away or furnished, for beverage purposes, and whoever from and after the thirty days aforesaid in any manner directly or indirectly, sells, furnishes, or gives away, or otherwise deals in any intoxicating liquors as a beverage, or keeps or uses a place, structure or vehicle, either permanent or transient for such selling, furnishing or giving away or in which or from which intoxicating liquors are sold, given away

or furnished, or otherwise dealt in as aforesaid, shall be guilty of a misdemeanor, and shall on conviction thereof be fined not more than two hundred dollars nor less than fifty dollars for the first offense, and shall for the second offense be fined not more than five hundred dollars nor less than one hundred dollars, and for any subsequent offense be fined not less than two hundred dollars and be imprisoned not more than sixty days and not less than ten days. But nothing contained in any of the sections of this act shall in any manner affect the right of any manufacturer of intoxicating liquors from the raw material, to sell, deliver, and furnish his product in wholesale quantities to *bona fide* retail dealers trafficking in intoxicating liquors or in wholesale quantities to any party or parties residing outside the limits of said municipality.''

Section 3 of the act provides:

''This act shall take effect and be in force from and after its passage.''

It is fortunate that these provisions of the Constitution have been before the Supreme Court regarding legislation of a similar character, and from these decisions we are furnished with much light, if indeed the questions are not authoritatively settled. In *Gordon* v. *State,* 46 Ohio St., 607, the Supreme Court had before it what is known as the township local option law passed March 3, 1888 (85 O. L., 55).

Sections 1 and 2 of that act, which are Sections 4364-24 and 4364-25, Revised Statutes, provide as follows:

''Whenever one-fourth of the qualified electors of any township, residing outside of any municipal incorporation, shall petition the trustees thereof for the privilege to determine by ballot whether the sale of intoxicating liquors as a beverage shall be prohibited within the limits of such township and without the limits of any such municipal corporation, such trustees shall order a special election for the purpose, to be held at the usual place or places for holding township elections; and notice shall be given and the election conducted in all respects as provided by law for the election of township trustees; and only those electors shall be entitled to vote at such election who reside within the township and without the limits of any such municipal incorporation. A record of the result of such election shall be kept by the township clerk in the record of the proceedings of township trustees; and in all trials for violation of this act, the original entry of said record, or a copy thereof certified by

the township clerk, provided that it shows or states that a majority was against the sale, shall be *prima facie* evidence that the selling, furnishing, giving away, or keeping a place, if it took place from and after thirty days from the day of the holding of said election, was then and there prohibited and unlawful.

"Persons voting at any election held under the provisions of this act, who are opposed to the sale of intoxicating liquors as a beverage shall have written or printed on their ballots 'Against the sale;' and those who favor the sale of such liquors shall have written or printed on their ballots 'For the sale;' and if a majority of the votes cast at such election shall be 'Against the sale,' then from and after thirty days from the day of the holding of said election, it shall be unlawful for any person within the limits of such township and without the limits of such municipal corporation to sell, furnish or give away any intoxicating liquors to be used as a beverage, or to keep a place where such liquors are kept for sale, given away or furnished; and whoever sells, furnishes or gives away any intoxicating liquors as a beverage, or keeps a place where such liquors are kept for sale, given away or furnished, shall be fined not more than five hundred dollars, nor less than fifty dollars, and imprisoned in the county jail not exceeding six months; but nothing in this section shall be construed so as to prevent the manufacture and sale of cider, or sale of wine manufactured from the pure juice of the grape, cultivated in this state, nor to prevent (a) legally registered druggist from selling or furnishing pure wines or liquors for exclusively known medicinal, art, scientific, mechanical, or sacramental purposes; but this provision shall not be construed to authorize the keeping of a place where wine, cider or other intoxicating liquors are sold, kept for sale, furnished or given away as a beverage."

Section 8 of this act provides, "This act shall take effect and be in force from and after its passage," the same as the Beal Law.

It is difficult to make any distinction between this law and the one under consideration other than that law refers to townships outside of municipal corporations while the Beal Law affects all municipal corporations of the state. In *Gordon* v. *State,* 46 Ohio St., 607, and *State* v. *Rouch,* 47 Ohio St., 478, the Supreme Court in the syllabus, which is the law of the cases and by which we must be controlled, held:

"The act entitled, 'An act to further provide against the evils resulting from the traffic in intoxicating liquors by local option

in any township in the state of Ohio,' passed March 3, 1888, is not in conflict with the Constitution and is a valid law."

In those cases the precise questions made in this case and which we are now considering were submitted and determined and must be conclusive unless such distinctions in the two laws can be drawn as to make these decisions inapplicable. It is claimed in argument that there is a distinction between the act of March 3, 1888 (85 O. L., 55), and the one under consideration in this case, that municipal corporations differ from townships proper; and, further, that the question counsel makes in this case was not presented in those cases, to-wit, that in order to make a law of a general nature have a uniform operation throughout the state it must operate upon all the people in the state and all the territory of the state. To use the language of one of the counsel in his argument, "it must act upon every person and every mile, acre and foot of the territory alike."

It is true that here is a distinction between townships and municipalities, especially in their government; townships are governed ordinarily by laws emanating directly from the General Assembly, while municipalities are governed ordinarily by laws or ordinances made by the law-making power of the municipality, authorized by the General Assembly. But certainly what the General Assembly could authorize a municipality to do, it could do itself. It would be a strange anomaly that the agent could act by the authority of the principal and yet the principal could not act directly in the same manner in its own behalf.

By Section 6, Article XIII of the Constitution, it is provided:

"The General Assembly shall provide for the organization of cities and incorporated villages by general laws."

In State v. Hawkins, 44 Ohio St., 98, 110, Minshall, J., in the opinion, says:

"The organization and government of cities is left, by the Constitution, to the General Assembly, with the requirement (Article XIII, Section 6) that it shall, by general laws, provide therefor; and the entire system of municipal government in this state has, in the exercise of this power, been created by the Legislature."

Under this provision the General Assembly has at different times enacted laws providing that any municipal corporation

shall have full power to regulate, restrain and prohibit ale, beer and porter houses and other places where intoxicating liquors are sold at retail, and such laws have uniformly been held to be constitutional. *Burckholter* v. *McConnellsville,* 20 Ohio St., 308; *Madden* v. *Smeltz,* 2 C. C., 168.

In *Burckholter* v. *McConnellsville, supra,* in the second paragraph of the syllabus it is held:

"It is no ground of objection to the validity of such municipal ordinances, when clearly authorized, that state legislation has not extended a similar prohibition over all parts of the state. It is for the law-making power of the state to determine within the limitations of the Constitution, to what extent city or village councils shall be invested with the power of local legislation."

In the opinion Chief Justice Scott says:

"Morality. and good order, the public convenience and welfare, may require many regulations in crowded cities and towns, which the more sparsely settled portions of the country would find unnecessary."

In *Madden* v. *Smeltz, supra,* it is held in the third paragraph of the syllabus:

"That the statute authorizing the passage of such an ordinance. is not in conflict with Article II, Section 26 of the Constitution of the state."

In the opinion Albaugh, J., says:

"It is also claimed that the act under which the ordinance was passed is inhibited by Article II, Section 26 of the Constitution which provides that 'all laws of a general nature shall have a uniform operation throughout the state.' Legislation upon the subject of regulating, restraining and prohibiting the sale of intoxicating liquors, has been held to be of a general nature, and should have a uniform operation throughout the state. Legislation upon the subject of regulating, restraining and prohibiting the sale of intoxicating liquors, has been held to be of a general nature, and should have a uniform operation throughout the state. The general authority conferred upon municipal corporations by this statute to regulate, restrain and prohibit the keeping of ale, beer and porter houses, and other places where intoxicating liquors are sold, etc., has a general application to all such corporations within the state, and there-

fore does not partake of the local character that is restricted by this section of the Constitution.''

It would therefore seem that if legislation upon the subject of intoxicating liquors may be distinguished as it respects the state at large and municipalities, that laws of general nature might have a uniform operation when applied to municipalities when they would not when applied to portions of the state outside of municipalities. Certainly no good reason can be assigned why laws of a general nature applicable to municipalities would not have a uniform operation when the same law would have a uniform operation when applied to townships outside of municipalities, and we must hold that *Gordon* v. *State, supra,* is applicable to the statute under consideration.

It is said that the question made by counsel in this case was not made in *Gordon* v. *State, supra,* to-wit, that to have a uniform operation throughout the state the law must apply to every person within the state and to every foot of territory of the state, whether within or without municipalities, and it is strenuously insisted by counsel that, if that question had been presented, the decision would have been against the constitutionality of the law. Counsel say that in this case, in the opinion rendered by Dickman, J., that wherever he speaks of the township he always refers to the whole township, using the language ''any township,'' ''every township.'' The provisions of the act are bounded only by the limits of the state,'' etc. And they infer from the language that it never entered into the mind of the learned judge that the act under consideration only pertained to that part of the different townships lying without the limits of municipal corporations. It would be strange indeed that all the learned counsel in the case, and all the judges deciding the case, should overlook this important element of the controversy, and especially is this so when the same act was again before the Supreme Court in *State* v. *Rouch,* 47 Ohio St., 478, in which Spear, J., says:

''In *Gordon* v. *State,* 46 Ohio St., 607, the township local option act was attacked as unconstitutional on the ground that the act is of a general nature, and has not a uniform operation throughout the state; also, that it is a delegation of powers to

the people.  *  *  *  In all these respects the act was held by
the court not to be obnoxious to the objection urged, and to be
valid.''

Is it necessary that legislation of a general nature, in order
to have a uniform operation throughout the state, must affect
every person within the state and every foot of territory within
the state, as claimed by counsel?  If so, very much of the im-
portant legislation of the state and specially upon the subject
of intoxicating liquors would be swept from the statute of the
state.  Laws prohibiting the sale of intoxicating liquors within
a certain distance of agricultural fairs, religious societies, chil-
dren's homes, soldiers' homes, colleges, etc., would all be un-
constitutional.

Do the words ''uniform operation throughout the state''
necessarily have such broad signification?  Webster defines
''throughout'' primarily, ''quite through;'' ''from one ex-
tremity to the other of.''  Certainly no such interpretation of
the words as counsel has placed upon them has been entertained
by our Supreme Court.

In *Heck* v. *State*, 44 Ohio St., 536, it was held:

''The clause, 'whoever sells intoxicating liquors within two
miles of the place where an agricultural fair is being held   *
*  *   shall be fined,' etc., contained in Sec. 6946, Rev. Stat.,
as amended May 2, 1885 (82 O. L., 222), includes sales made
by one whose place of business is permanently located within
such distance, and is not in conflict with any provision of the
Constitution, and is a valid law.''

In the opinion, Minshall, J., says:

''It is also argued that the law is not uniform in its oper-
ation because it applies to the liquor dealer whose place of busi-
nes is just within, and does not apply to the one that is just
without the prescribed limit, and is, therefore, in conflict with
Section 26, Article II of the) Constitution.  Is this tenable?
Laws made applicable to cities and villages of a certain grade
and class have been sustained time and again by the court,
although they do not apply to those of another grade and class.
A law is general and uniform that applies to all persons and
things coming within its provisions throughout the state.  Its
uniformity consists in the fact that no person or thing, of the

description of any person or thing affected by it, except from its operation.

"The language of this law is general, and applies with uniformity to every person engaged in the business of selling intoxicating liquors within two miles of any place where an agricultural fair is being held."

In *Gordon* v. *State, supra,* Dickman, J., uses this language:

"By the Municipal Code of May 7, 1869, Section 199, it was declared that all cities and corporated villages should, among other things, have the power, and might provide by ordinance for the exercise of such power 'To regulate, restrain and prohibit ale, beer and porter houses or shops; and houses and places of notorious or habitual resort for tippling or intemperance.' The uniformity in the operation of this law. of general nature was not measured and fixed by the number of cities and incorporated villages that might exercise the granted power. One or many might, like the village of McConnellsville, pass the needful ordinances, but the provision of the code was none the less uniform operation throughout the state. The feature of uniformity in the local option law under consideration would no more be marred because the qualified electors of the townships generally fail to adopt its provisions, than the above enactment of the Municipal Code would have ceased to operate uniformly, because cities and incorporated villages did not generally pass ordinances to prohibit ale, beer and porter houses."

In *Senior* v. *Ratterman,* 44 Ohio St., 661, 678, Spear, J., uses this language:

"Nor is the proposition tenable that the law being of a general nature is not of uniform operation throughout the state, and for that reason repugnant to Section 26 of Article II of the Constitution. True, the law is of a general nature and does discriminate between the general dealer and the manufacurer. It requires the one to pay, and the other, where the sales are of one gallon and over, is exempted. This implies a division of the two into separate classes, but does not show that because of that fact the law is not of uniform operation. The principal of uniform operation requires simply that the law shall bear equally in its burden upon persons standing in the same category. A law is uniform in its operation where every person who is brought within the relation and circumstances provided for is alike affected by the law. It must have a uniform oper-

ation upon all those included within the class upon which it purports to operate. It is not claimed that the law does not purport to operate equally upon all wholesale dealers who are not manufacturers. As between the wholesale dealer and the manufacturer there is manifestly a real tangible difference, though they have characteristics in common. The General Assembly has chosen to classify and to discriminate accordingly. If the classification is proper the discrimination can not be objected to. We are not prepared to say that the classification is not warranted.''

There is no doubt but what the Supreme Court has somewhat receded from its previous opinions as to what legislation comes within Section 26, Article II of the Constitution and will eventually hold, if it has not already practically held, that legislation only affecting grades and classes of cities and villages is prohibited by Section 26, Artcle II. Yet it is doubtful if the pendulum will swing so far back as to make legislation of the character in controversy, applying to all municipalities, unconstitutional under that article and section; certainly it has not yet done so and it would be presumptious for a judge of a lower court to assume that it will do so.

As to the referendum clause of the act, which provides that an election shall be held and the qualified electors determine when the law should be enforced, it is sufficient to say that question was fully considered and determined in *Gordon* v. *State*, *supra*, that clause being the same in both acts. Dickman, J., in the opinion, says, p. 630:

''But it is further contended that the act is a delegation of legislative power to the people, and therefore in contravention of Section 1, Article II of the Constitution. That section provides that the legislative power of the state shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives. It is a general rule that the agent whose employment and trust are personal, can not, without express and implied authority from his principal, delegate his power. And it is a settled maxim that when the people, in their sovereign capacity, have by the Constitution conferred the law-making power upon the Legislature, that department can not delegate such power to any other body. The power must remain where located, and laws must be enacted through the established agency, until there is a change in the Constitu-

tion itself. Yet, while the principle may be universally recognized, that the Legislature can not evade its constitutional trust as the law-making agent, difficulty may arise in determining, whether by any special act the Legislature has, directly or indirectly, sought to divest itself of its constitutional authority and obligation. The natural tendency of the legislative department is to encroachment, and we may well be inclined in the first instance to question whether it has relinquished any portion of its power.

"In the exercise of the duties devolved upon the legislative branch of the state government, it is manifest that discretion and judgment are required, not only in determining the subject matter of legislation, but not unfrequently in ordering the conditions or contingencies upon which laws are to be carried into effect. It may be deemed expedient in one case to provide for preliminary action before a law is executed, which under other circumstances would not be adopted. In requiring such proceedings prior to the enforcement of a law, the Legislature need not be prevented from keeping within the strict line of its authority.

"It is evident, we think, that the act whose constitutional validity is called in question was a complete law when it passed through the several stages of legislative enactment, and derived none of its validity from a vote of the people. In all its parts it is an expression of the will of the Legislature, and its execution is made dependent upon a condition prescribed by the legislative department of the state. By its terms it was made to take effect from and after its passage. The qualified electors derived their authority to petition the trustees, and the trustees obtained their authority to order a special election directly from the Legislature. The right of the electors to register their votes for or against the sale of intoxicating liquors is conferred by the same body. If a majority of the votes cast at such election should be against the sale, the traffic in intoxicating liquors is thereby prohibited and made unlawful, by virtue of the act of the General Assembly, which may at once, if a change should come over the legislative will, repeal the law and avoid the result of the election. So far from the vote of the electors breathing life into the statute, it is only through the statute that the electors are entitled to vote at the special election. While they are free to cast their votes, the consequence of their aggregate vote is fixed and declared by that act of the Legislature. The penal sanction of the act is subject to no modification by the action of the electors, and it is an elementary principle that 'the main strength and force of a

law consists in the penalty annexed to it.   Herein is found the principal obligation of human laws' (1 Black Com., 57).   In some of the authorities which we have examined the idea is prominent, that when the voters are called on to express by their ballots their opinion as to the subject matter of the law, they declare no consequence, prescribe no penalties and exercise no legislative functions.   The consequences, it is said, are declared in the law, and are exclusively the result of the legislative will.''

The citation of these authorities conclusively show that counsel for plaintiff are wrong in their first two objections to the constitutionality of the law which constitute their main contention.

There are several other objections that should be noticed. It is claimed that this law contravenes Section 18, Article I of the Constitution, in the provision that at any time after two years another election may be held, and if a majority decide in favor of the sale of intoxicating liquors, then the law is suspended; and this provision of the Constitution is violated which provides that "no power of suspending laws shall ever be exercised except by the General Assembly.''

Not so.   The law is in no manner suspended; it still continues in full force.   As we have seen, it was in full force and effect after its passage before any election was held.   The election simply provided for its enforcement.   And the second election is the mere expression of the opinion of the electors that they do not longer desire it to be enforced.   If the law went into effect immediately after its passage and before the first election, as was decided in *Gordon* v. *State* and *Santoro* v. *State, supra,* certainly the second election would not suspend the law.

While this distinct question was not passed upon in *Gordon* v. *State, supra,* a similar question was presented.   Messrs. Ferguson, Johnson and Retallic, in their brief, make one of the grounds of objection to the constitutionality of the law "that it authorizes the people to suspend or repeal a law, to-wit, the Dow Law.''   The judge in his opinion did not refer to this question. Possibly he considered it not of sufficient importance.

It is also said it contravenes Section 11, Article III, in this, that it grants unto the people the pardoning power by permitting a second election. The result of the second election, although it might be in favor of "the sale," would not absolve from any offense previously committed when the sale is prohibited.

Again, it is claimed that the law is in violation of Section 10, Article I of the Constitution in this, that it does not afford the party accused the right to have "a trial by an impartial jury of the county or district in which the offense is alleged to have been committed." The theory of counsel is that in a case of this character the jury should only be selected from the municipality where the law is violated, while the law permits the jurors to be selected from the body of the county within and without the municipality. It is true the offense can only be committed within the municipality; nevertheless it is committed within the county, and the jury is selected from the county. It is a little difficult to see how it differs from any other offense committed in the county. If the party was charged with larceny committed within the municipality, he could be tried by a jury impanneled from the body of the county. Simply because this offense can only be committed within the municipality could make no difference. No authority is referred to. Many persons have been convicted for selling liquors within the prescribed limits of agricultural fairs, colleges, etc.; also for violation of the township local option act, and this question does not seem to have been before raised; and the practice having been so long continued without objection, raises a strong presumption of the validity of the law.

It is claimed that the law violates Sections 1 and 2 of the Bill of Rights and the Fourteenth Amendment of the Federal Constitution in this, that it discriminates between parties living within and without municipalities and between manufacturers and dealers.

As a general proposition all the people of the state should have the same rights and privileges and be subject to the same burdens and penalties; but the subject matter of legislation must be considered. When Lord Palmerston was home secretary

under Lord John Russell, he proposed to the ministry that a bill should be introduced in parliament repealing all laws discriminating against the sale of malt liquors. He insisted that he could see no reason under the law how its sale could be legally restricted any more than that of molasses. The premier answered, "My lord, the reason is apparent. One is beer and the other treacle," and declared that such a bill could not receive the support of the government as then constituted. It has been determined again and again by our Supreme Court that the General Assembly might prohibit the traffic in intoxicating liquors entirely. It is said by McIlvaine, J., in *State* v. *Frame*, 39 Ohio St., 399:

"If, in the judgment of the General Assembly, it be necessary, in order to prevent evils resulting from the traffic, that the sale and use of intoxicating liquors as a beverage be absolutely prohibited, we can see no constitutional ground upon which such exercise of its judgment and discretion can be reviewed."

If it can be prohibited, it can be restricted, and the place, amount and manner of sale may be determined. If, in the judgment of the General Assembly, the traffic should not continue within municipalities, then it may discontinue it, and no one within the municipality must engage in the traffic. If, in the judgment of the General Assembly, the manufacturer may engage in the traffic under certain restrictions, by selling in quantities and to persons described in the act, and all persons not manufacturers may not do so, then it may so determine (*Senior* v. *Ratterman, supra*). It is a question for its judgment and discretion to determine under Section 18 of the schedule to the Constitution what are the best means to provide against the evils resulting from the traffic. Upon this theory are all the laws we have now and ever had relating to the subject, much of which legislation has already been referred to. Certainly no one can complain that he is discriminated against by not being permitted to engage in the traffic which the organic law of the state recognizes as an evil and which the highest court of the state has declared may be prohibited altogether.

As said in *Gordon* v. *State, supra,* so often referred to:

"When the General Assembly was clothed with authority by the Constitution to provide by law against the evils resulting from the traffic in intoxicating liquors, it was left to its discretion—subject to such express limitations as the Constitution imposed—to select the means whereby the evils might be avoided. The Legislature, in the plentitude of its discretion, having determined upon the methods of providing against such resulting evils, it would not be for the judicial branch of the state government to interfere."

It is again claimed that the statute is so defective in its provision that it can not be properly executed, and therefore has no validity in law. This claim is founded upon the clause which provides that the manufacturer may sell in wholesale quantities. The inquiry is made, what is a wholesale quantity? How shall it be averred in the indictment and who shall determine it, the court or the jury? This objection might be disposed of by saying that plaintiff has no interest in the determination of this question, he not being charged as a manufacturer selling at wholesale, and therefore no concern of his (*Van Wert* v. *Brown,* 47 Ohio St., 477). An act, though not clear and definite, though vague and uncertain as to its method of enforcement, may nevertheless be valid. It will not be declared void because it is difficult of execution. A law may be imperfect in its details, yet it is not void unless it is so imperfect as to render it impossible to execute it. *Cochran* v. *Loring,* 17 Ohio, 409, 427; *Gordon* v. *State, supra.*

Tested by these rules, is the act void upon this ground? Many acts of the General Assembly have provisions that are not clear and definite and have only been made so by judicial determination. This applies to criminal as well as to civil acts. In the act defining burglary, what is night season? What is it to forcibly break and enter; what is other building? These words have been made clear by judicial determination. Many similar cases might be cited. The word "wholesale" is not a word of difficult interpretation, and the court would have no trouble in determining its meaning. It may have a definite and determinate signification, as used in this act, and needs no interpretation. In *State* v. *Rouch, supra,* it was held that the local

option act and Dow Law should be construed together and as a part of the same general subject, and, where necessary to a clear understanding of either, are to be construed together. The Dow Law fixes the quantity which a manufacturer may sell, at one gallon or more, and such no doubt was the intention of the General Assembly in the use of the word "wholesale" in this act.

Objection is also made that the law provides as to what shall constitute *prima facie* evidence of the fact that the election was legally held. It is certainly within the power of the General Assembly to provide as to the quantum of proof necessary and as to what shall constitute proper evidence. The proceeding in courts, criminal and civil, in all its stages, is the subject of legislation, and is controlled only by the inhibition of the Constitution, and we know of no provision of the Constitution which prohibits the General Assembly from determining what shall be sufficient evidence *prima facie* or conclusive in actions subsequently arising.

Objection is also made to the section making disposition of fines collected. That also is a matter of no concern to plaintiff. What difference is it to him whether the fine, if one is assessed against him, be paid into the county or municipal treasury? This section provides, as we understand it, that when the fine is imposed by a magistrate within the municipality where the traffic is prohibited, it shall be paid into the municipal treasury. Disposition of fines has always been provided for by the General Assembly. Sometimes they are paid into one fund, sometimes into another, and sometimes a part or even a whole is ordered paid to an informer. Section 6802, Revised Statutes, provides that all fines shall be paid "into the treasury of the county in which such fine was assessed "unless otherwise required by law. This act requires that under certain circumstances the fines shall be paid into the municipal treasury.

As before stated, a large number of objections have been made by distinguished counsel on both sides, all of which we believe have been referred to; justice to counsel seemed to require that. On both sides the arguments and briefs show that a great amount of labor has been bestowed upon the case, and we have received

invaluable assistance from the arguments and briefs. The conclusion to which we have arrived we consider the only one to which we could come. With the propriety or wisdom of the law we have nothing to do. From the decisions of our Supreme Court, as they now are, the law must be held to be constitutional. We should add, as stated by Chief Justice Marshall, ''that a law should not be declared unconstitutional without a clear and strong conviction of the incompatability of the Constitution and the law.'' This would particularly apply to an inferior court, and more especially where but one judge of that court passes upon its constitutionality. The plaintiff will be remanded to defendant, sheriff of Guernsey county.

*R. M. Nevin, F. S. Monnett* and *James Joyce,* for petitioner.
*W. B. Wheeler* and *A. L. Stevens,* for respondent.