**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 1, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LOUIE ANTHONY DALTON,

Defendant - Appellant.

No. 04-7043

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 03-CR-100-WH)**

Submitted on the briefs:[*]

Paul D. Brunton, Federal Public Defender, Michael A. Abel, Assistant Federal Public Defender, Barry L. Derryberry, Research and Writing Specialist, Office of the Federal Public Defender, Northern and Eastern Districts of Oklahoma, Tulsa, Oklahoma, for Defendant - Appellant.

Sheldon J. Sperling, United States Attorney, Ryan M. Roberts, Assistant United States Attorney, Muskogee, Oklahoma, for Plaintiff - Appellee.

Before **TACHA,** Chief Circuit Judge, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**ANDERSON**, Circuit Judge.

Louie Anthony Dalton ("Dalton") pleaded guilty to a one-count indictment charging him with conspiracy to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. He appeals his 150-month sentence, arguing (1) that the district court clearly erred in estimating the drug quantity it relied on for sentencing, and (2) the sentence violated Blakely v. Washington, 124 S. Ct. 2531 (2004), and United States v. Booker, 125 S. Ct. 738 (2005),[1] because it was based on a judicial finding of drug quantity. We AFFIRM.

## BACKGROUND

On October 6, 2003, police in Sallinsaw, Oklahoma, received a tip that Dalton had purchased from Wal-Mart a large quantity of items that are used in methamphetamine manufacturing. Police stopped Dalton and Talina Richmond ("Richmond") as they were leaving the store and found in their truck incriminating items, including twelve cans of starting fluid, several blister packs of pseudoephedrine, stained coffee filters, a set of digital scales, and numerous

---

[1] When the defendant raised Blakely before this court, the Supreme Court had not yet issued Booker. We nonetheless apply both cases.

syringes. Methamphetamine was also found in the vehicle and on Richmond's person. The officers subsequently executed a search warrant on the trailer home Dalton and Richmond shared and found items indicative of a methamphetamine laboratory, such as a propane bottle with blue corrosion, cans of solvent, a bottle of HEET, and a propane camp stove. About forty yards from the home, in a wooded area, officers discovered a camouflaged trunk containing numerous cans of starting fluid, glassware, coffee filters, funnels, plastic tubing, bottles of HEET, and wooden spoons. Officers also found a ledger wherein Dalton had recorded nearly $10,000 in drug debts owed to him. The total amount of methamphetamine recovered from the truck and the trailer was 51.33 grams.

Dalton was arrested and charged with one count of conspiracy to distribute 50 or more grams of methamphetamine. He pleaded guilty without the benefit of a plea agreement. The presentence report ("PSR") recommended that Dalton be held responsible for manufacturing 700 grams of methamphetamine over the course of four months.[2] This quantity was based on Richmond's initial report to

---

[2]Although the indictment charged Dalton with conspiracy to deliver only 50 or more grams of methamphetamine, the district court took into account all quantities of drugs involved as relevant conduct under United States Sentencing Commission, Guidelines Manual ("USSG" or "Guidelines") §1B1.3. The court also determined that USSG §2D1.1, comment. (n.12), applied. That note states that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the
(continued...)

officers that she had lived with Dalton for four months, during which time they produced about an ounce of methamphetamine two to three times per week. Dalton objected to the PSR's conclusions about the amount of methamphetamine manufactured. The government subsequently called Richmond to testify on its behalf at the sentencing hearing.

Richmond's testimony at the hearing, however, varied from what she had previously told investigators. On cross-examination, she testified that she began living with Dalton after her second arrest for drug activity, which she admitted was around the middle of August 2003. That living arrangement continued until the Wal-Mart arrest on October 6, 2003. The defense noted at the hearing that if those dates were correct, the period of cohabitation was only about a month and a half. Richmond insisted that she was there longer than that but could not remember any dates.

Richmond next testified that she and Dalton cooked the methamphetamine in the woods by their home. She stated that no manufacturing occurred during the first fourteen days she lived with Dalton. But she could not remember the first few times that methamphetamine was cooked, could not give a number of times

[2](...continued)
price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size and capability of any laboratory involved."

-4-

methamphetamine was cooked, and stated that sometimes she would sleep while Dalton performed the process. When asked whether in previous interviews with investigators she had guessed about the quantity of methamphetamine manufactured per week, Richmond stated, "I don't remember . . . on a lot of it. I mean I'm not going to say for sure." Tr. of Sentencing Hr'g at 30, R. Vol. III. She also testified that she had used methamphetamine for ten years and had ingested the drug daily during the past few years. She admitted that use of the drug affected her memory of dates because of long periods of wakefulness followed by long periods of sleep.

The district court stated on the record that Richmond's testimony was not proof beyond a reasonable doubt of the drug quantity in the PSR, but found that the testimony bore minimum indicia of reliability. The judge noted that the case was difficult and took a recess to perform his own calculations based on what he had heard. The judge thereafter found by a preponderance of the evidence that Richmond stayed with Dalton for two and a half months, and drug manufacturing occurred during all but two weeks of that period. Based on Richmond's testimony, the drug ledger, the 408 tablets of pseudoephedrine seized from the trailer home, and the other evidence of the methamphetamine laboratory, the judge also found by a preponderance of the evidence that Dalton cooked methamphetamine two times per week, with approximately .75 ounces

manufactured per occasion, resulting in slightly over 350 grams of methamphetamine mixture involved in this case. The finding of 350 grams brought the base offense level to 30 under USSG §2D1.1(c). The court deducted three points for Dalton's acceptance of responsibility, which, with a criminal history level of five, set the Guidelines range at 120 to 150 months in prison. The court sentenced the defendant to 150 months' imprisonment, the top of the range, noting that the lengthy sentence was "to provide just punishment, to promote respect for the law, and to protect the public." Tr. of Sentencing Hr'g at 70, R. Vol. III. Dalton timely filed this appeal.

## DISCUSSION

### I. Drug quantity determination

Dalton first challenges the district court's determination under USSG §2D1.1, comment. (n.12), that he was responsible for manufacturing at least 350 grams of methamphetamine. We review a district court's legal interpretation of the Guidelines de novo. United States v. Johnson, 42 F.3d 1312, 1320 (10th Cir. 1994). Factual findings regarding drug quantities are reviewed for clear error and are reversed "only if the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." United States v. Ryan, 236 F.3d 1268, 1273 (10th Cir. 2001) (further

quotation omitted). "When the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate to establish the defendant's guideline offense level 'so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability.'" United States v. Ruiz-Castro, 92 F.3d 1519, 1534 (10th Cir. 1996) (quoting United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir. 1995)) (further quotation omitted). However, the "need to estimate drug quantities at times is not a license to calculate drug quantities by guesswork." United States v. Richards, 27 F.3d 465, 469 (10th Cir. 1994) (further quotation omitted).

After reviewing the transcript of the sentencing hearing in this case, we are convinced that the district court's drug-quantity estimation was not clearly erroneous. Richmond's testimony, although vague, was corroborated by numerous other items of evidence, including ingredients in the methamphetamine recipe—twelve cans of starting fluid and several blister packs of pseudoephedrine—and items indicative of a manufacturing laboratory. Officers also found a ledger in which at least $10,000 in drug debts were recorded and learned of a letter Dalton wrote from prison in which he set forth the recipe for manufacturing the drug and instructed his friends to use it to raise bail money. All of these items are properly considered in the drug quantity calculation. See

USSG §2D1.1, comment. (n.12).  And, as noted above, the district court set forth its calculations on the record after taking a recess to closely review Richmond's testimony, the PSR, and the other evidence.  The court's drug-quantity determination had sufficient factual support.

## II.    Booker claim

Booker held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  Booker, 125 S. Ct. at 756.  District courts post-Booker are required to consult the Guidelines in fashioning sentences, but they are not required to sentence within the Guidelines range.  United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (en banc).  Constitutional Booker error occurs when the district court "re[lies] on judge-found facts . . . to enhance a defendant's sentence mandatorily."  Id.

Booker therefore does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.  The remedial portion of Booker demonstrates that such fact-finding is unconstitutional only when it operates to increase a defendant's sentence *mandatorily*.  We recently noted that "in sentencing criminal defendants for federal crimes, district courts are still required

to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before. The only difference is that the court has latitude, subject to reasonableness review, to depart from the resulting Guideline range." United States v. Magallanez, No. 04-8021, __ F.3d__, 2005 WL 1155913, at *8 (10th Cir. May 17, 2005). See also United States v. Trujillo-Terrazas, 405 F.3d 814, 818 (10th Cir. 2005) ("By rendering the Guidelines discretionary, the Court saved the process of judicial factfinding from unconstitutionality under the Sixth Amendment.")

Dalton argues that the district court committed constitutional Booker error by finding by a preponderance of the evidence that he conspired to deliver 350 or more grams of methamphetamine. He contends that his sentence should be reversed and the case remanded because without the district court's drug-quantity finding, which was based on testimony of an unreliable witness, he would only have been responsible for the 50 grams charged in the indictment.

Because Dalton did not raise this issue below, we review for plain error. Booker, 125 S. Ct. at 769 ("[W]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."); Gonzalez-Huerta, 403 F.3d at 732. "'Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or

public reputation of judicial proceedings.'" Gonzalez-Huerta, 403 F.3d at 732 (quoting United States v. Burbage, 365 F.3d 1174, 1180 (10th Cir.), cert. denied, 125 S. Ct. 510 (2004)). When constitutional rights are at stake, plain-error review is conducted less rigidly. United States v. Brown, 316 F.3d 1151, 1155 (10th Cir. 2003). Constitutional rights are clearly at issue in this case because Dalton's sentence was mandatorily enhanced based on judicial fact-finding.

Dalton has met the first two prongs of the plain-error test: there was error in this case, because the district court was operating under Guidelines it thought were mandatory, and that error was plain. See United States v. Dazey, 403 F.3d 1147, 1174-75 (10th Cir. 2005). However, because we conclude below that Dalton cannot meet the fourth prong of plain-error review, we need not decide whether his substantial rights were affected. See United States v. Cotton, 535 U.S. 625, 632-33 (2002); Gonzalez-Huerta, 403 F.3d at 736.

Under the fourth prong of plain-error review, the reviewing court may in its discretion correct the error if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks omitted). The fourth-prong standard is relaxed in cases of constitutional error, such as this case, but the defendant still bears the burden of showing that we should exercise our discretion. Dazey, 403 F.3d at 1178.

We recently outlined five factors that might show that a defendant has satisfied the fourth prong:

> (a) a sentence increased substantially based on a Booker error; (b) a showing that the district court would likely impose a significantly lighter sentence on remand; (c) a substantial lack of evidence to support the entire sentence the Guidelines required the district court to impose; (d) a showing that objective consideration of the [21 U.S.C.] § 3553(a) factors warrants a departure from the sentence suggested by the Guidelines, or (e) other evidence peculiar to the defendant that demonstrates a complete breakdown in the sentencing process.

United States v. Dowlin, Nos. 03-8038 & 03-8055, __ F.3d __, 2005 WL 1155882, at *18 (10th Cir. May 17, 2005) (citations omitted).

Applying these factors to this case, we conclude that, on balance, Dalton has not shown that we should exercise our discretion under the fourth prong. First, whether Dalton's sentence was substantially increased based on the Booker error is open for debate. Without any judicial fact-finding, Dalton would have been responsible for the 50 grams in the indictment to which he pled guilty, which would have resulted in a total offense level of 23 and a Guidelines range of 84 to 105 months. The finding of 350 grams increased the offense level to 27, with a Guidelines range of 120 to 150 months, an increase of three years and nine months.

We need not resolve whether this increase must necessarily be considered "substantial." In the circumstances of this case, this factor is not dispositive of

-11-

our holding since, as our discussion below demonstrates, the other factors listed above predominate.

Accordingly, applying the second factor, even if we were to remand, the district court likely would not impose a lighter sentence. After the district court determined that the applicable Guidelines range was 120 to 150 months' imprisonment, it sentenced Dalton to 150 months in prison, at the top of the range. We recently held that the fourth prong was not satisfied because the defendant was sentenced to the maximum term of imprisonment the court could impose. United States v. Mozee, 405 F.3d 1082, 1092 (10th Cir. 2005). We concluded that there was "no basis for us to assume that [the defendant] would receive a lesser sentence if he were resentenced under a discretionary sentencing regime in which the district court is required to 'consider' the guidelines when it exercises its discretion." Id. Dalton's sentence likewise would not change in the event of remand because the judge already had discretion to impose a lower sentence but opted not to use that discretion.

Third, the sentence is supported by sufficient evidence in this case. Although, as detailed above, Richmond's testimony was vague and contradictory at times, it was strongly corroborated by other evidence, including the items indicative of a methamphetamine laboratory found in Dalton's vehicle and trailer home.

-12-

Fourth, the 18 U.S.C. § 3553(a) factors do not support a lesser sentence. When imposing a sentence at the top of the range, the court commented that the lengthy sentence was warranted "to provide just punishment, to promote respect for the law, and to protect the public." Tr. of Sentencing Hr'g at 70, R. Vol. III. These comments demonstrate that the district court considered the sentencing factors under 18 U.S.C. § 3553(a) and found they did not favor a decreased term of imprisonment. See § 3553(a)(2)(A)–(C) (stating that the court shall consider the need for the sentence imposed to "promote respect for the law," to "provide just punishment for the offense," and to "protect the public from further crimes of the defendant").

Finally, we can identify no peculiar evidence in this case demonstrating a breakdown in the sentencing process. Therefore, on balance, the defendant has not shown that the error in this case seriously affected the fairness, integrity or public reputation of judicial proceedings, and thus he has not satisfied plain-error review.

## CONCLUSION

Accordingly, we AFFIRM Dalton's sentence.