**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

            Plaintiff-Appellee,

v.

DENNIS DEAN DAZEY, also known
as Wooly West,

            Defendant-Appellant.

No. 05-6258

(D.C. No. 02-CR-92-R)

---

**ORDER ON PETITION FOR REHEARING**

---

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

---

Defendant-Appellant Dennis Dean Dazey requests panel rehearing. Dazey brought to the court's attention the erroneous omission of the trial transcript from the record transmitted by the district court to this court for the purposes of Dazey's appeal. In light of this omission, the panel grants rehearing and withdraws its prior Order and Judgment dated June 27, 2007. The panel

supplemented the record on appeal with the eleven-volume trial transcript and

reviewed those portions of the trial transcript cited in the parties' briefs.  A

revised Order and Judgment is issued.

<div style="margin-left: 40%;">
Entered for the Court
Elisabeth A. Shumaker, Clerk


By:
    Deputy Clerk
</div>

F I L E D
United States Court of Appeals
Tenth Circuit

August 2, 2007

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DENNIS DEAN DAZEY, also known
as Wooly West,

Defendant-Appellant.

No. 05-6258

(W.D. Oklahoma)

(D.C. No. 02-CR-92-R)

ORDER AND JUDGMENT[*]

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.


I.    INTRODUCTION

Defendant Dennis Dean Dazey returns to this court after resentencing on

convictions for conspiracy to commit fraud, wire fraud, and money laundering.  In

*United States v. Dazey* (*Dazey I*), 403 F.3d 1147 (10th Cir. 2005), this court

concluded Dazey was entitled to a new sentencing proceeding in light of the

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220

(2005).  On remand, the district court found by a preponderance of the evidence

the same facts it found at the original sentencing hearing.  It imposed an identical

sentence length, restitution order, and forfeiture order as in the original

sentencing hearing.  Dazey again appeals his sentence.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a),

this court finds Dazey's legal and factual arguments unavailing.  We therefore

**affirm** Dazey's sentence, restitution order, and forfeiture order.[1]

---

[1]The argument headings in Dazey's brief challenge the reasonableness of
the $100,000 forfeiture order.  The brief's text, however, entirely omits argument
on the issue.  Accordingly, we decline to consider Dazey's claim and affirm the
district court's $100,000 forfeiture order. *See United States v. Edwards*, 69 F.3d
419, 430 (10th Cir. 1995) ("[I]t is insufficient merely to state in one's brief that
one is appealing an adverse ruling below without advancing reasoned argument as
to the grounds for the appeal." (quotation omitted)); Fed. R. App. P. 28(a)(9)(A)
("The appellant's brief must contain . . . the argument, which must contain: (A)
appellant's contentions and the reasons for them, with citations to the authorities
and parts of the record on which the appellant relies.").  Consistent with Dazey's
failure to provide substantive argument on forfeiture, he failed to include with his
brief a copy of the forfeiture order as required by Tenth Circuit Rule 28.2(A)(1).
Because of Dazey's failure to provide substantive argument on forfeiture,
Appellee is excused from its obligation under Rule 28.2(B).

## II. BACKGROUND

### A. *Dazey I*

The facts of Dazey's case are set out at length in *Dazey I,* 403 F.3d at 1156–59. Dazey, along with several co-defendants, engaged in a conspiracy to defraud investors through a fraudulent investment company called Wealth-Mart. Wealth-Mart was portrayed as an investment fund that promised short-term high returns by investing in overseas "prime" banks in accordance with Christian and humanitarian principles. During the late 1990s, investors poured more than $14 million into Wealth-Mart. None of this money was ever invested overseas and little of it was ever returned to investors. *Id.* at 1156.

Following a jury trial for his role in the Wealth-Mart scam, Dazey was convicted of one count of conspiracy to commit fraud under 18 U.S.C. § 371, ten counts of wire fraud under 18 U.S.C. § 1343, and one count of money laundering under 18 U.S.C. § 1957. At sentencing in June 2003, prior to the Supreme Court's decision in *Booker*, the district court accepted the probation officer's calculation that Dazey's base offense level under the United States Sentencing Guidelines was six. The district court heard evidence on the four sentencing enhancements included in the Presentence Investigative Report ("PSR"). The court found by a preponderance of the evidence facts to support the following three enhancements: loss of more than $7,000,000, U.S.S.G. § 2B1.1(b)(1)(K) (twenty-level enhancement); offense including more than fifty victims, U.S.S.G.

§ 2B1.1(b)(2)(B) (four-level enhancement); and obstruction of justice, U.S.S.G. § 3C1.1 (two-level enhancement).

At sentencing, the district court determined Dazey's adjusted offense level was thirty-two, which, combined with a criminal history category of I, carried a sentencing range of 121 to 151 months. According to well-settled law at the time of sentencing, the court applied the Sentencing Guidelines in a mandatory fashion and sentenced Dazey to 121 months' imprisonment. The court also ordered Dazey to pay $2,966,257 in restitution pursuant to 18 U.S.C. § 3663A, and incorporated a $100,000 forfeiture order for money laundering into the court's final judgment. The court indisputably used judge-found facts to increase Dazey's sentence beyond the maximum authorized by the jury verdict. *Dazey I*, 403 F.3d at 1173.

In *Dazey I*, this court held that, in light of *Booker*, Dazey's Sixth Amendment rights were violated. *Id.* at 1174. The *Dazey I* court engaged in plain error analysis and determined Dazey met all four prongs of the plain error test. *Id.* at 1174–79. It therefore remanded the case to the district court for resentencing. *Id.* at 1179.

## B.   Post-*Booker* Resentencing Proceeding

At Dazey's resentencing hearing, FBI Special Agent Kevin Markey summarized the evidence the Government presented at trial. Agent Markey recounted testimony and evidence about Dazey's role in the conspiracy in order to

show Dazey could have reasonably foreseen more than $7 million in losses to Wealth-Mart investors. In support of the sentencing enhancement for more than fifty victims, Agent Markey stated there were approximately 130 victims listed in the restitution order. Additionally, he cited multiple instances of Dazey's false testimony at trial to support an enhancement for obstruction of justice. The Government did not present any new evidence at the resentencing hearing, choosing instead simply to remind the court about the evidence and arguments it made at the initial sentencing hearing. Dazey did not present any evidence at all.

Upon reconsideration of the same evidence it had considered at Dazey's initial sentencing hearing, the district court found by a preponderance of the evidence that losses of $7 million were attributable to Dazey, Dazey's scheme had more than fifty victims, and Dazey had obstructed justice by giving false testimony at his trial.[2] Acknowledging the advisory nature of the Guidelines, the court again determined Dazey fell within the Guidelines range of 121 to 151 months. It once again sentenced Dazey to a 121-month prison term, ordered him to pay $2,966,257 in restitution, and ordered Dazey to forfeit $100,000.

---

[2]These findings on remand are unremarkable in the sense that they are the same findings, made upon the same preponderance of the evidence standard, as were made at the original sentencing hearing. It would appear that the sentencing court on remand could have merely adopted its original findings and proceeded to the imposition of a sentence under the post-*Booker* regime of the advisory, non-mandatory Sentencing Guidelines.

## III. DISCUSSION

On appeal to this court, Dazey presents several arguments in support of his request for modification of his sentence: (1) the district court improperly used a preponderance of the evidence standard in finding facts related to sentencing when such facts should have been determined by the jury according to a reasonable doubt standard; (2) the district court erroneously determined Dazey was responsible for more than fifty victims based on insufficient evidence, including unreliable hearsay from Agent Markey and in the PSR; (3) the district court erroneously determined Dazey obstructed justice, violating Dazey's Fifth Amendment rights; (4) the amount of loss attributed to Dazey was erroneous and not foreseeable to him, as is required by U.S.S.G. § 1B1.3(a)(1)(B); and (5) his sentence, restitution order, and forfeiture order are unreasonable. For reasons explained below, Dazey cannot prevail on any of these claims.

### A. District Court Correctly Applied the Preponderance of the Evidence Standard at Resentencing

At the resentencing hearing, Dazey contended the district court could not enhance his sentence based on facts not admitted by him unless the jury had found those facts beyond a reasonable doubt. Dazey's counsel acknowledged his claim was inconsistent with the controlling law in this circuit, which continues to recognize the preponderance of the evidence standard as applicable to judicial factfinding at sentencing. *See United States v. Dalton*, 409 F.3d 1247, 1252 (10th

Cir. 2005); *United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir.), *cert. denied*, 126 S. Ct. 468 (2005). Dazey, however, continues to advocate the application of the reasonable doubt standard on appeal.

For the reasons stated in *Dalton* and *Magallanez*, the district court applied the correct standard in evaluating the factual evidence related to Dazey's sentencing enhancements. As this court has explained, "Constitutional *Booker* error occurs when the district court re[lies] on judge-found facts . . . to enhance a defendant's sentence mandatorily." *Dalton*, 409 F.3d at 1252 (quotation omitted). It is only the *mandatory* application of enhancements that create constitutional problems, not the manner in which the facts underlying the enhancements are found.

**B.    The District Court's Factual Finding as to the Number of Victims Was Not Clearly Erroneous and Did Not Rely on Impermissible Hearsay**

At the resentencing hearing, Agent Markey summarized evidence presented at trial regarding the number of Wealth-Mart investors. He stated the restitution order listed approximately 130 victims. He indicated the people included in the restitution order had either testified at trial or returned an investor questionnaire. Agent Markey also stated Government trial exhibits showed more than fifty people who had deposited money either into Dazey's bank account or Wealth-Mart's account and who were confirmed through search warrants or testimony at trial to be victims. Although Dazey objected to Agent Markey's description of the number of

victims included in the restitution order as hearsay, the district court overruled this objection.[3] The court found the Government proved there were at least 130 victims and said, "for the purpose of this conspiracy, [Dazey] should be held accountable for 130."

On appeal, Dazey asserts the evidence of the number of victims affected by the Wealth-Mart scheme was insufficient to support an enhancement under U.S.S.G. § 2B1.1(b)(2)(B).[4] He argues § 2B1.1(b)(2)(B) requires "actual loss" on the part of "victims," and contends that the testimony presented at trial and referenced at resentencing does not support a finding of actual loss by more than fifty investors. Additionally, Dazey resurrects his hearsay objection to Agent Markey's testimony that there were hundreds of victims and also challenges as hearsay the statement in the PSR that "[T]here are several hundred victims in this case." He asserts the statements are unsupported and therefore unreliable.

This court reviews the district court's legal interpretations of the Sentencing Guidelines *de novo* and reviews the factual findings used to enhance a defendant's sentence for clear error. *Dalton*, 409 F.3d at 1251. Factual findings are reversed "only if the district court's finding was without factual support in the record or we

_____

[3]Dazey's hearsay objection to the restitution order was the fourth such objection to Agent Markey's testimony. The court earlier overruled Dazey's objections by stating the court's view that Markey was simply summarizing the trial evidence.

[4]U.S.S.G. § 2B1.1(b)(2)(B) states, "If the offense . . . involved fifty or more victims, increase by 4 levels."

are left with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted).

Based on Agent Markey's recitation of the evidence presented at trial and in the Government's exhibits, this court concludes there was no clear error in the district court's determination that Dazey's crimes involved more than fifty victims. According to Agent Markey's recollection, the trial court received evidence that the Government and the FBI identified 130 victims for the purposes of the restitution order. Additionally, Agent Markey pointed to a notation in Dazey's day planner indicating 104 people attended one of the three seminars for potential investors at which Dazey spoke in Colorado. Dazey has not provided contradictory evidence about how many attendees at the conference actually invested or otherwise rebutted the asserted fact that the Government identified 130 individuals deserving restitution. Thus, this court cannot say the district court's finding of Dazey's responsibility for loss to over fifty victims was without factual support.

While the nature of Agent Markey's testimony summarizing evidence the court had already heard during the guilt phase of the trial was wholly unnecessary, Dazey's hearsay objection to Agent Markey's testimony misses the mark. Agent Markey's testimony does not fit the definition of hearsay in Federal Rule of Evidence 801(c) because it was merely summarizing the evidence and

testimony presented to the trial court during prior in-court proceedings.[5]  Were

Markey's testimony hearsay, however, it would not have been barred from the

resentencing hearing because the Federal Rules of Evidence do not apply to

sentencing proceedings.  Fed. R. Evid. 1101(d)(3); *United States v. Shewmaker*,

936 F.2d 1124, 1129 (10th Cir. 1991).  Most important, Agent Markey's

testimony had no effect as testimony; it was merely a means to refresh the court's

recollection of the evidence the court had heard during the jury trial on Dazey's

guilt.  The court itself noted that Agent Markey's testimony merely reflected what

the evidence had been.  Agent Markey's testimony was therefore no more than

what the government's attorney could have argued.  The court itself indicated that

its sentence was based, in part, on its memory of the trial testimony.  As a

consequence, the testimony of Agent Markey was not prejudicial to Dazey.

Finally, Dazey asserts the PSR contained inadmissible hearsay regarding

the number of victims.  We need not decide whether the statement in the PSR is

hearsay because the district court did not say it relied on this statement in

determining the number of victims.

In sum, this court concludes there was no error in the district court's

findings regarding the number of victims, and holds the imposition of the four-

---

[5]A more appropriate challenge might have been found in Federal Rules of Evidence 401 and 402, defining and limiting admissible evidence to that which is relevant, or Rule 602, requiring a witness to have personal knowledge of the matter to which he is testifying.

level enhancement under U.S.S.G. § 2B1.1 was an appropriate exercise of the district court's discretion in sentencing.

## C.     The District Court Did Not Erroneously Find Dazey Obstructed Justice and Did Not Violate Dazey's Fifth Amendment Right To Testify

At resentencing, Agent Markey referenced three instances in which testimony given by Dazey was contradicted by testimony of other witnesses. Specifically, Agent Markey said Dazey testified he (1) never identified himself to investors as a trader, whereas five of the investors, each of whom attended separate seminars and did not know one another, testified Dazey did identify himself as a trader; (2) had never worn a tracking device overseas, whereas one of the investors testified Dazey told him he wore a tracking device when he traveled to Europe; and (3) was unemployed and had to shut down his business and lay off his employees during trial, whereas, in his post-trial detention hearing, Dazey testified he needed time to close his business and had to take care of his fourteen employees.  Agent Markey also reminded the court that Dazey contradicted himself under oath about his use of $7000 in investor's funds:  Dazey stated on direct examination he had used the money to pay his credit card bill for travel expenses related to a railroad bond deal but admitted on cross-examination the credit card debt had actually arisen from the purchase of camping equipment for use on a camping trip with his son.

The district court found by a preponderance of the evidence that Dazey

obstructed justice and, accordingly, enhanced his sentence by two levels under

U.S.S.G. § 3C1.1.[6] The court supported its decision with the finding that Dazey

"tried to deceive the Court and the jury by saying that he never had represented

himself as a trader nor that he had made these other statements that were self-

aggrandizing." The court also placed significance on his testimony "about the

$7,000 that he said were for railroad bonds that actually went for a camping trip."

Dazey argues there is insufficient evidence to support the obstruction of

justice enhancement. He also claims the finding that he obstructed justice based

on his trial testimony is a violation of his Fifth Amendment right to testify in his

own defense.

This court reviews the district court's legal conclusions regarding the

applicability of the Guidelines *de novo* and factual findings for clear error.

*Dalton*, 409 F.3d at 1251. Application Note 4(b) of U.S.S.G. § 3C1.1 defines

obstruction of justice as, *inter alia*, "committing, suborning, or attempting to

suborn perjury." In order to use a defendant's perjury as a basis for applying the

obstruction of justice sentencing enhancement, the district court must determine

that the defendant (1) gave false testimony under oath, (2) concerning a material

---

[6]U.S.S.G. § 3C1.1 provides, "If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels."

matter, (3) and did so willfully, "rather than as a result of confusion, mistake or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Additionally, according to Tenth Circuit precedent, the court must explicitly specify the false statements it considered in imposing the enhancement. *United States v. Hawthorne*, 316 F.3d 1140, 1146 (10th Cir. 2003); *United States v. Massey*, 48 F.3d 1560, 1573 (10th Cir. 1995).

We conclude the district court satisfied the requirements set out in *Dunnigan* and *Massey*. The district court said explicitly that Dazey had given false testimony under oath. Accepting the district court's findings regarding the nature of Dazey's false statements, this court concludes the false statements were material. *See* U.S.S.G. § 3C1.1 cmt. n.6 (defining a material statement as one which "if believed, would tend to influence or affect the issue under determination"). Additionally, the court's statement that Dazey "tried to deceive the court" satisfies the requirement that the statements were made with "willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Massey*, 48 F.3d at 1573. The district court also identified the specific instances of false testimony it considered in imposing the enhancement. *Id.* This panel concludes, therefore, the district court's finding of obstruction of justice was procedurally proper and sufficient evidence supported the enhancement.

As to Dazey's Fifth Amendment claim, Dazey asserts the district court's

-13-

imposition of the obstruction of justice sentencing enhancement would not have occurred but for his decision to testify at trial. As the Supreme Court stated more than a decade ago, a defendant "cannot contend that increasing her sentence because of her perjury interferes with her right to testify, for we have held on a number of occasions that a defendant's right to testify does not include a right to commit perjury." *Dunnigan*, 507 U.S. at 96. Although the Sentencing Guidelines acknowledge the risk that a defendant's desire to exercise his constitutional right to testify might result in misstatements that an overzealous court or prosecutor might characterize as obstruction of justice, that risk is not manifest here.[7] Dazey has proffered no excuse for his false testimony. He has not attempted to claim he suffered from confusion, mistake, or faulty memory.

Thus, contrary to Dazey's contention, this is not a case where "[t]he mere fact that a defendant testifies to his or her innocence and is later found guilty" led to a finding of obstruction of justice. *United States v. Anderson*, 189 F.3d 1201, 1213 (10th Cir. 1999). The district court set forth specific statements made by Dazey and refuted by other witnesses to support its finding that Dazey had obstructed justice. Dazey's untruthfulness was not linked solely to his denial of

---

[7]In anticipation of such a misuse of U.S.S.G. § 3C1.1, Application Note 2 says, "This provision is not intended to punish a defendant for the exercise of a constitutional right . . . . [I]naccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a wilfull attempt to obstruct justice."

guilt and, therefore, his Fifth Amendment rights were not violated.

For the reasons discussed above, this court concludes the district court's finding of obstruction of justice under U.S.S.G. § 3C1.1 was not improper. We hold the district court's imposition of a two-level enhancement under that provision was neither clearly erroneous nor unconstitutional.

**D.    There Was Sufficient Evidence to Attribute More Than $7 Million in Victim Losses to Dazey**

At the resentencing hearing, the Government argued for the imposition of a sentencing enhancement for more than $7 million in losses, pursuant to U.S.S.G. § 2B1.1(b)(1)(K). It requested the enhancement based on the theory that Dazey's central role meant he should be held accountable for more than the $2,292,500 which went directly to him. Agent Markey reviewed for the court the trial testimony and evidence relating to Dazey's role in the Wealth-Mart scheme.

First, Agent Markey explained the evidence showed Dazey received chartered air flights from Wealth-Mart co-conspirator Ronald Gerald Craft to three seminars in Colorado in early 1998. Dazey represented himself as an overseas trader to investors at these seminars. Second, the evidence indicated Dazey provided cell phones to Craft and another conspirator, which were used almost daily for communications about Wealth-Mart; the phones had phone numbers with Dazey's Tulsa area code to deceive investors into thinking they were calling Dazey's office. Third, Agent Markey referred to bank records

showing that three investors deposited a total of nearly $2.3 million into Dazey's "LaMesa" account at Nation's Bank at the beginning of the conspiracy; this money was used to purchase a car and real property and to pay personal credit card debt. Fourth, Agent Markey reminded the court about money that Dazey and Craft invested with a third party to help cover up the Wealth-Mart fraud. Fifth, Agent Markey said evidence showed Craft received $1 million in cash and $3.3 million in property; Markey also detailed other payments made and received during the course of the conspiracy. He estimated the total dollar loss to be $14.6 million and placed Dazey as the "number two" person in the conspiracy behind Craft.

In response to Agent Markey's characterization of Dazey's role, Dazey did not dispute the existence of the evidence Markey referenced, but argued his role was minimal. He highlighted he was not one of Wealth-Mart's "founders," was never employed by Wealth-Mart, had not made promises regarding the yield or return on any investment, had no contact with investors other than at the three Colorado seminars, gave no instructions on the mechanics of investing in Wealth-Mart to any potential investors, and did not make "lulling statements" to induce investment in Wealth-Mart. Dazey also noted he was not involved in Wealth-Mart's day to day operations, did not receive any of the benefits of the cars or real property procured by Craft, and did not go on Craft's Carribean cruise. In sum, Dazey argued that, as a matter of law, his mere receipt of money from and

association with Craft could not have made the total amount of loss resulting from the conspiracy attributable or foreseeable to him.

Finding the evidence persuasive, the district court enhanced Dazey's sentence by twenty levels for losses in excess of $7 million. When considering Dazey's responsibility for the aggregate loss caused by Wealth-Mart, the district court said it had been "perhaps overly lenient" in the initial sentencing proceeding when it rejected a sentencing enhancement under U.S.S.G. § 3B1.1(a) for Dazey's leadership role in the offense, and stated Dazey did, in fact, play a major role. In support of its decision to impose the loss enhancement, the court highlighted Dazey's receipt of over $2 million, portrayal of himself as "investor in chief" who "played a substantial role in tempting . . . investors to invest in a completely fraudulent scheme," repeated phone communications with Craft, and Dazey's role in providing cell phones to Craft. The court also noted Dazey himself received over $2 million and, therefore, it was reasonably foreseeable that other parties to the conspiracy would receive "much more than that."

As with the imposition of the sentencing enhancements reviewed above, this court reviews the district court's legal conclusions *de novo* and factual findings for clear error. *Dalton*, 409 F.3d at 1251. Dazey urges this court to construe "reasonable foreseeability" under the Guidelines narrowly, relying on the Sentencing Guidelines Manual's caution that "[t]he principles and limits of sentencing accountability under this guideline are not always the same as the

principles and limits of criminal liability." U.S.S.G. § 1B1.3 cmt. n.1. Dazey's

contention is that his conspiracy conviction should not be co-extensive with the

total amount of loss caused by the conspiracy where his direct interaction was

limited only to his participation in the three Colorado seminars.[8]

Case law does not support Dazey's position. "In a conspiracy case, loss is

calculated on the basis of all reasonably foreseeable acts and omissions of others

in furtherance of the jointly undertaken criminal activity[] that occurred during

the commission of the offense of conviction . . . ." *United States v. Suitor*, 253

F.3d 1206, 1209 (10th Cir. 2001) (quotation omitted). Based on the evidence

discussed at the resentencing proceeding and cited by the district court on the

magnitude of the Wealth-Mart operation, this court concludes the factual

predicates necessary to find Dazey responsible for the Wealth-Mart conspiracy's

aggregate loss were present. Although Dazey himself only received a little less

than $2.3 million, the evidence shows he knew he was part of a much larger

scheme from which his co-conspirators would reap substantial gains. Dazey has

---

[8]In his brief to this court, Dazey also contends the amount of loss for which he can be held responsible is the amount specified in the indictment, which Dazey calculates to be $362,250. Dazey does not cite any support for this proposition, nor does any exist in our case law. While it is true, as the *Dazey I* court noted, the indictment in this case was imprecise, that imprecision does not foreclose the sentencing court from engaging in factfinding on the amount of loss. *Cf. United States v. Burridge*, 191 F.3d 1297, 1304–05 (10th Cir. 1999) (upholding district court decision to consider conduct not included in the indictment at sentencing when determining the amount of loss attributable to defendant).

not provided any evidence to persuade this court that the district court's findings about Dazey's role in the conspiracy "from beginning to end" were clearly erroneous.  We accordingly hold it was reasonably foreseeable to Dazey that the amount of loss would be more than $7 million.

**E.    Dazey's Sentence and Restitution Order Were Not Unreasonable[9]**

*1.    Dazey's 121-Month Sentence*

Dazey contends the district court did not properly take the factors enumerated in 18 U.S.C. § 3553(a) into account at resentencing.  He argues his 121-month sentence was unnecessarily harsh and unreasonable.  He claims the court's sentencing decision failed to take into account his age, lack of prior criminal history, and actual imprisonment of two and a half years at the time of resentencing.

This court first determines whether the district court appropriately calculated the applicable Guidelines range.  *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).  If the Guidelines range was calculated correctly, we review the defendant's sentence for reasonableness.  *Id.*  If the sentence imposed is within the Guidelines range, the sentence is entitled to a presumption of reasonableness.  *Id.*; *see Rita v. United States*, 551 U.S. ___, No. 06-5754, slip. op. at 7 (U.S. June 21, 2007) (upholding appellate presumption of reasonableness

---

[9]Dazey also purports to challenge the reasonableness of the forfeiture order. See *supra* note 1, however, regarding the disposition of this challenge.

for within-Guidelines sentences).  The presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a).  *Kristl*, 437 F.3d at 1054.

Because Dazey does not challenge his base offense level and because this court has determined the district court did not err when it imposed the three sentencing enhancements discussed above, we conclude the district court properly calculated Dazey's applicable Guidelines offense level as thirty-two.  Under the Guidelines, the combination of an offense level of thirty-two and criminal history category I yields a now-advisory sentencing range of 121 to 151 months.  Dazey was sentenced at the bottom of the range to 121 months' imprisonment.

Because Dazey's sentence falls within the Guidelines range, it is presumptively reasonable.  *Kristl*, 437 F.3d at 1054.  The only remaining question is whether Dazey has provided any evidence to rebut the presumption of reasonableness.  Other than rehashing his argument that his role in the Wealth-Mart scheme was not as great as the district court believed it to be, the factors Dazey points to as making his sentence unreasonable are his age and lack of criminal record.  This minimal showing is not enough to demonstrate the unreasonableness of his sentence.  Dazey raised these issues with the district court prior to the pronouncement of his sentence.  The district court presumably took these factors into consideration when evaluating the Guidelines range in light of § 3553(a).  *See Rita*, slip op. at 17 (discussing parameters of sentencing

court's obligation to explain its consideration of the § 3553(a) factors).

Therefore, this court concludes Dazey's 121-month sentence is reasonable.

    *2.      Dazey's Restitution Order for $2,966,257*

    After finding the Government proved $2,966,257 in claims to identifiable victims, the district court reasonably determined Dazey should pay $2,966,257 in restitution pursuant to 18 U.S.C. § 3663A for the more than $7 million in total loss that Wealth-Mart caused its victims.

    The Mandatory Victim Restitution Act of 1996 ("MVRA") requires the payment of restitution in any case involving an "offense against property under [Title 18]," including "any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). The procedures for issuing and enforcing a restitution order are set forth in 18 U.S.C. § 3664.

    This court reviews *de novo* a district court's interpretation of the MVRA, reviews the factual findings on which a restitution order is based for clear error, and reviews the amount of restitution ordered for an abuse of discretion. *United States v. Wilson*, 416 F.3d 1164, 1169–70 (10th Cir. 2005). Dazey argues the statute requires a nexus between the convicted offense and the loss being remedied and, therefore, restitution should be limited to the amount stated in the indictment or the amount reasonably foreseeable to Dazey. This argument merely restates the sufficiency of the evidence argument discussed above.

    Dazey does not include any persuasive authority to convince this court the

-21-

restitution order is unreasonable.  In light of the conclusions this court reached regarding the number of victims and amount of loss, we hold the factual findings underpinning the district court's restitution order were not clearly erroneous and the amount of restitution ordered was not an abuse of the district court's discretion.

## IV.  CONCLUSION

For the foregoing reasons, Dazey's sentence, restitution order, and forfeiture order, as imposed by the district court, are **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge