**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALAN EDUARDO CHAVARIN,

Defendant - Appellant.

No. 18-4011
(No. 1:16-CR-00609-DB-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **KELLY**, and **EID**, Circuit Judges.
_____

Appellant Alan Eduardo Chavarin challenges the imposition of a United States

Sentencing Guidelines ("U.S.S.G.") § 3C1.1 enhancement for obstructing the

administration of justice. The district court applied the enhancement against Chavarin for

knowingly presenting false testimony at his trial. Exercising our jurisdiction under 28

U.S.C. § 1291, we affirm the district court's imposition of the enhancement.

**I.**

What began as a routine traffic stop for Chavarin in November 2016 quickly

escalated. He did not have a driver's license—it had been recently suspended. Nor did

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive
value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

he possess the vehicle's registration—the vehicle was rented by his girlfriend who was out of state. Further, the officer noticed a straw lying next to a razor blade on the center console. This immediately raised the suspicions of the officer, because razor blades and straws are often associated with drug use.

Chavarin consented to a search of his vehicle. During the search, law enforcement found five packages in the vehicle's spare tire. Testing revealed that the packages contained 8.4 pounds of heroin.

In a post-*Miranda* interview at the field office, Chavarin first said he was driving to Cheyenne to visit a girl. He admitted that he swallowed heroin after the officer stopped him. But he denied knowing about the existence of any other drugs in the vehicle. After learning he would be booked into jail, Chavarin's demeanor conveyed to law enforcement that "he wanted a deal to try and get himself out of the situation he was in." ROA Vol. I at 417.

Chavarin and officers began to discuss "different options." *Id.* at 381. It was at this point that Chavarin recanted his previous story. No longer was he headed to Cheyenne to see a girl; rather, Chavarin confessed he was traveling to Kansas City to deliver drugs. He told officers "he was working for an organization" that he had purchased heroin from in the past. *Id.* at 380. Chavarin stated that he was only delivering these drugs to "square up his debt with them." *Id.* at 387.

During these discussions, Chavarin expressed concern about what would happen to him if he cooperated with police and then became incarcerated. *Id.* at 417–18. But at

2

no time did Chavarin ever tell law enforcement that he ever felt threatened or coerced into transporting these drugs. *See id.* at 383, 387, 422.

A deal never materialized for Chavarin. The government charged him with one count of possessing heroin with the intent to distribute, a violation of 21 U.S.C. § 841(a)(1) and punishable under 21 U.S.C. § 841(b)(1)(A). *Id.* at 15–16.

At trial, there was no question about whether or not Chavarin committed the offense. The focus was on what motivated him to transport the drugs. Chavarin's sole defense was duress. *See* Aplt. Br. at 2–4. He explained that he had been addicted to heroin from a young age. *See* ROA Vol. III at 9. This addiction led to him becoming indebted to various drug dealers. Before long, Chavarin testified he became involved with the violent Sinaloa cartel.

After spending approximately nine months incarcerated for drug trafficking, Chavarin stated that he became clean and was released. But within less than a year, Chavarin began using heroin once again. He quickly ran up a debt with the cartel, and he testified that he began to receive threats related to the debt. *Id.* at 16. Chavarin told the jury that he received menacing phone calls from the cartel and saw mysterious cars parked in front of his house. *Id.* The threats were not limited to Chavarin: a man named Chewy, a member of the cartel, allegedly threatened Chavarin's family. ROA Vol. I at 344. And then someone ransacked his home. ROA Vol. III at 20. Ultimately, the cartel directly threatened Chavarin by telling him that they would kill him and his family unless he transported drugs for the organization. *Id.* at 17–18. Only as a last resort—and

3

because he was under threat—Chavarin testified that he agreed to perform the drug run that led to his arrest. *Id.* at 21–23, 27.

On cross-examination, Chavarin admitted that he never told the arresting officers that he had *ever* been threatened by the cartel. *Id.* at 27–32. Chavarin was unable to give specifics about any of the alleged threats against him or his family. For example, he stated that his cartel contact's real name was Jesus Gonzales (which the government argued was a suspiciously "generic name"). *Id.* at 35, 85. He could not remember where he was when the cartel threatened him other than that he was "in the street." *Id.* at 38–39. Chavarin testified that the threat to his family was made "a month" before his arrest but did not give a more specific date. *Id.* at 38. In closing, the government pointed out the utter lack of details in Chavarin's testimony and argued that his duress defense was not credible. *Id.* at 85. The jury rejected his duress defense and convicted him on the one count. ROA Vol. I at 210.

At sentencing, the district court applied a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1. The district court stated that the "obstruction of justice is appropriately added based on the defendant's defense, which I find was unfounded in fact and law." ROA Vol. III at 121. The district court opined at length that Chavarin's defense was false—stating among other things, that the defense was "bogus," a "false defense," and a "charade." *Id.* at 123–25. The district court concluded that "Mr. Chavarin took that witness stand and actually committed perjury." *Id.* at 123. Based on those findings, the court applied the obstruction of justice enhancement. Chavarin was

4

sentenced to 188 months' imprisonment—the bottom of the advisory Guidelines range. *Id.* at 125.

## II.

A district court's legal interpretation of the Sentencing Guidelines is typically reviewed de novo, and its factual findings are reviewed for clear error. *United States v. Sarracino*, 340 F.3d 1148, 1172 (10th Cir. 2003) (citations omitted). On appeal, Chavarin argues the district court failed to make the findings underlying the obstruction enhancement with sufficient specificity. But at sentencing, he never objected to the court's allegedly inadequate explanation; rather, Chavarin only argued that "there was no evidence . . . that clearly rebuts the testimony of Mr. Chavarin about his duress and coercion." ROA Vol. III at 113. To that end, Chavarin simply requested that the district court "not [] impose the two-level increase" for obstruction of justice. *Id.*

Thus, we review his procedural challenge to the adequacy of the district court's findings only for plain error. *See United States v. Gantt*, 679 F.3d 1240, 1246–47 (10th Cir. 2012) (conducting plain error review concerning a claim of inadequate explanation because defendant failed to notify the district court that its explanation was deficient— thereby depriving the district court of the ability to cure any error); *see also United States v. Flonnory*, 630 F.3d 1280, 1288 (10th Cir. 2011) (reviewing for plain error the defendant's argument as to the adequacy of district court's perjury findings when the defendant did not object on that ground at the trial level).

To prevail under the plain error standard, Chavarin must demonstrate: (1) error (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the

5

fairness, integrity, or public reputation of judicial proceedings.  *See Gantt*, 679 F.3d at

1246 (quoting another source).

**III.**

The sole issue before us is the propriety of the enhancement for obstruction of

justice.  U.S.S.G. § 3C1.1 sets forth in broad language the enhancement's scope:

> "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or
> impede, the administration of justice with respect to the investigation, prosecution,
> or sentencing of the instant offense of conviction, and (2) the obstructive conduct
> related to (A) the defendant's offense of conviction and any relevant conduct; or
> (B) a closely related offense, increase the offense level by 2 levels."

U.S.S.G. § 3C1.1.  The commentary to § 3C1.1 lists many examples of covered

conduct—one of which is when a defendant commits perjury.  *Id.* cmt. 4(b).

In *United States v. Dunnigan*, the Supreme Court outlined the requirements for

imposing a § 3C1.1 perjury enhancement.  507 U.S. 87 (1993).  It said that district courts

"must review the evidence and make independent findings necessary to establish a willful

impediment to or obstruction of justice, or an attempt to do the same, under the perjury

definition."  *Id.* at 95.  "[I]t is preferable," the Court added, "for a district court to address

each element of the alleged perjury in a separate and clear finding."  *Id.*  But it is also

sufficient if the finding simply "encompasses all of the factual predicates for a finding of

perjury."  *Id.*

Aside from this guidance, our circuit "further requires that the district court be

explicit about which representations by the defendant constitute[] perjury."  *Flonnory*,

630 F.3d at 1287 (citing *United States v. Hawthorne*, 316 F.3d 1140, 1146 (10th Cir.

2003)).  But consistent with *Dunnigan*, a district court need not "recite the false

statements verbatim." *Id.* (quoting another source). And yet this examination must still "generally identify the testimony at issue so that when we review the transcript we can evaluate the *Dunnigan* findings of the elements of perjury . . . without having simply to speculate on what the district court might have believed was the perjurious testimony." *Hawthorne*, 316 F.3d at 1146 (ellipses and internal quotation marks omitted).

On review, we are aware district courts must be afforded adequate discretion in their fact-finding capacity. After all, district courts hold an advantage in fact-finding where, as here, the sentencing enhancement is based upon trial proceedings they have personally observed. *See Gall v. United States*, 552 U.S. 38, 51–52 (2007). But these advantages do not relieve district courts of their obligation to find the facts necessary for meaningful appellate review. When the obstruction of justice enhancement is based on a defendant's alleged perjury, the district court's findings should encompass the factual predicates of perjury—namely that the defendant: (1) gave false testimony under oath; (2) concerning a material matter; (3) with the willful intent to provide false testimony. *See Hawthorne*, 316 F.3d at 1146 (citing *Dunnigan*, 507 U.S. at 94).

## IV.

Chavarin raises two concerns with his enhancement for obstruction of justice. First, he contends the district court failed to specifically identify his allegedly perjurious statements. And Chavarin argues the court erred "because it never discussed the elements of perjury." Aplt. Br. at 5.

## A. Identification of the Perjurious Testimony

Chavarin is correct that we require the district court to identify the part of the testimony that is perjurious. But here, there was no error because there is no need for us "to speculate on what the district court might have believed was the perjurious testimony." *Hawthorne*, 316 F.3d at 1146 (quoting another source) (internal quotation marks omitted).

Contrary to Chavarin's claim, the district court repeatedly identified what it believed to be perjurious during his sentencing. Among other statements, the district court made the following findings as to Chavarin's perjury:

> "I find that obstruction of justice is appropriately added based on the *defendant's defense*, which I find was unfounded in fact and in law . . . the defendant's coercion and *duress defense* [is] wholly unsupported by facts . . . [Chavarin] chose to go to trial and present an absolutely *uncorroborated defense* . . . [t]he entire *defense* was bogus and it was a *false defense* . . . . The facts [Chavarin] gave in support of his feeling *coerced* were as weak as they could be."

ROA Vol. III at 121–24 (emphases added).

Compare these statements to a case in which we found the district court was specific enough. In *Hawthorne*, the district court "observed only that Defendant lied in [his] testimony at the suppression hearing about the voluntariness of the statements that [he] made to the officers." 316 F.3d at 1147 (alterations in original) (internal quotation marks omitted). What complicated our review was that "the central issue for resolution at the suppression hearing was whether Defendant's confession was voluntary" and so the district court's statement "could have been referring to almost any part of Defendant's testimony." *Id.* Even so, we looked to the context of the district court's statements and

8

concluded that it was clearly referencing only one part of the defendant's testimony: the "voluntariness" about requesting an attorney. *Id.* The district court's statements in our case are more specific than that of the district court in *Hawthorne*.

Now compare these statements to a case in which we found the district court lacked sufficient specificity in identifying the perjurious testimony. In *United States v. Massey*, 48 F.3d 1560 (10th Cir. 1995), the district court's finding was:

> "The testimony wasn't reconcilable with the jury verdict; that is, necessarily the jury had to find that the testimony was false in order to convict Mrs. Wilkins. I accept that finding. It's my personal finding in the case that the testimony was false, and consequently the objection is overruled."

*Id.* at 1574. To describe the court's commentary in *Massey* is to distinguish it from Chavarin's case.

We find the district court was unequivocal in identifying that its perjury finding encompassed the entirety of Chavarin's duress defense. As such, there was no need for the court to dissect apart Chavarin's testimony and then delineate which statements constituted perjury—the whole defense was perjurious. This was not a case where Chavarin offered multiple defenses. Nor was this a case where there were complicated layers to his duress defense. Rather, Chavarin argues that because of debts he owed to a violent drug cartel, members of the organization threatened his life and those of his loved ones unless he transported drugs for the cartel. *See* Aplt. Br. at 3–4; *see also* ROA Vol. III at 125. Thus duress—and nothing else—forced his actions.

In his reply brief, Chavarin contends that characterizing all of his duress defense as perjurious must fail—otherwise, none of the statements he made at trial would escape

9

this allegedly overbroad categorization. *See* Reply Br. at 4. But this simply misses the mark. For example, at trial, Chavarin provided background information about his name, his age, and where he grew up. He testified he became addicted to heroin at a young age. Aplt. Br. at 2. Chavarin noted that after his first incarceration, he lived with his fiancée's family, including her parents and two siblings. *Id.* at 3. None of these statements falls within the category of Chavarin's duress defense. And there is no reason to believe any of these biographical facts are false.

Even if there was any doubt as to what the district court was referring to when it discussed Chavarin's defense, the district court cited to specifics that it found perjurious. The district court noted that Chavarin failed to specify any "dates and places," referring to his inability to discuss when or where *any* of the supposed threats occurred. ROA Vol. III at 123. And when Chavarin attempted to offer specifics concerning his defense, the district court found them lacking in detail and uncorroborated. *See, e.g.*, *id.* at 124 ("The facts he gave in support of his feeling coerced were as weak as they could be, some mysterious car . . . in front of his house."). Then towards the end of its soliloquy, the district court summed up its finding:

> "Here we had a person who in trial was attempting to get the jury to believe that he was *coerced* because his family's life was in danger and his girlfriend's life was in danger . . . . Yet in trial he is willing to tell about them and it made no sense to me then . . . . To me the whole thing was a charade."

10

*Id.* at 125 (emphasis added). These comments—which all refer to aspects of Chavarin's duress defense—make abundantly clear that the district court's obstruction enhancement was based on Chavarin's testimony that the cartel forced him to transport drugs.[1]

"[H]ighly specific findings may not be possible in every case." *United States v. Denetclaw*, 96 F.3d 454, 459 (10th Cir. 1996) (quoting *United States v. Owens*, 70 F.3d 1118, 1132 (10th Cir. 1995)). Here, the district court pointed to particulars of the testimony it found perjurious—but it would have sufficed had the court merely identified the "substance" of Chavarin's testimony that was perjurious. *See Massey*, 48 F.3d at 1574 ("The district court may generally identify the testimony at issue . . . and it is sufficient if such testimony is merely described in substance."). The district court met this minimum requirement.

The requirement for particularity exists so that we can fulfill our appellate responsibility of reviewing whether the record supports findings of falsity, materiality and willful intent. *See id.* There was no confusion about what the district court considered perjurious. As a result, our review was devoid of speculation. We find no error—let alone plain error.

---

[1] It also noted that Chavarin provided only "one first name" of the cartel member who allegedly threatened him. ROA Vol. III at 123. The district court seems to have misremembered Chavarin's testimony, as Chavarin provided both a first and last name. *See id.* at 35. On appeal, Chavarin does not challenge this mistake. Regardless, in light of the specifics the district court identified as perjurious, this error is harmless.

## B. Elements of Perjury

Chavarin's second argument is the district court erred by failing to find that his trial testimony satisfied the elements of perjury. *See* Aplt. Br. at 5–6. But "[o]nce the perjurious testimony is identified, *Dunnigan* then permits fairly conclusory findings that such testimony was false, material, and given with intent to commit perjury." *Massey*, 48 F.3d at 1574. Under the facts and circumstances here, we find no error in the district court's imposition of the enhancement.

As previously recounted, the court repeatedly stated it believed Chavarin provided false testimony under oath—the first element of perjury. In fact, the district court noted Chavarin "was not even a good *liar*." ROA Vol. III at 124 (emphasis added). And the court characterized his whole duress defense "a charade," *id.* at 125, one "inconsistent and lacking in detail," *id.* at 122.

In response, Chavarin contends the district court's statements labeling his defense as "uncorroborated," "weak," and "unsupported by facts," do not amount to a finding of perjury. *See* Reply Br. at 10. But it is clear from the sentencing transcript that the district judge cited the lack of corroboration *as evidence* supporting its conclusion that *Chavarin's testimony was false*. For example, the district court observed that "[n]othing [about the defense] was corroborated." ROA Vol. III at 123. To that end, the court fixated on Chavarin's inability to give details about names, dates, or places relating to the cartel's alleged threats on his life. *See id.* Aggregated together, the lack of specifics helped the district court reach its conclusion that Chavarin's "entire defense was bogus and it was a false defense." *Id.*

12

The third element, willful intent, is clearly found when the district court stated at the sentencing hearing that, "[Chavarin] chose to go to trial and present an absolutely uncorroborated defense." *Id.* But if that was not sufficient, the court added Chavarin "took that witness stand and actually committed perjury." *Id.* And the district court concluded Chavarin made a "bad *choice*" in relaying this false narrative. *Id.* at 124 (emphasis added).

These statements are more than sufficient for a finding of willfulness. Even in the most charitable reading of the record for Chavarin, there is an absence of evidence that he was confused, mistaken or suffering from a faulty memory at the time of trial. As such, these statements support a reasonable inference that the district court found Chavarin's testimony to be willfully false. *See, e.g.*, *United States v. Webster*, 373 F. App'x 867, 871 (10th Cir. 2010) (unpublished) (upholding the district court's obstruction of justice enhancement although the district court failed to make a particularized finding that defendant's false statements were *willful* because there was no evidence defendant's testimony was the result of confusion, mistake or faulty memory); *see also United States v. Dazey*, 242 F. App'x 563, 571 (10th Cir. 2007) (unpublished) (holding that willfulness finding was sufficient when district court stated defendant "tried to deceive the court").

It is true that, as Chavarin points out, the district court did not explicitly identify the second element of perjury: materiality. Yet Chavarin fails on the third prong of plain error review. "For an error to affect substantial rights, Defendant bears the burden of showing a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Paup*, 933 F.3d 1226, 1235

(10th Cir. 2019) (quoting *United States v. Cook*, 550 F.3d 1292, 1298 (10th Cir. 2008)). Chavarin fails to establish he was prejudiced by any inadequacy in the district court's explanation concerning the materiality of his perjurious statements.

Given the lack of facts corroborating any aspect of Chavarin's duress defense, a remand requiring the district court to more explicitly state the obvious would change nothing. *See Flonnory*, 630 F.3d at 1288 (concluding that defendant did not demonstrate that the district court's failure to make specific findings affected his substantial rights because "it would be surprising if his sentence would be any different if we reversed and remanded for resentencing") (citing another source). Because the alleged defect in the district court's fact-finding did not affect Chavarin's substantial rights, any error was harmless.

Although we rule on the basis that the materiality argument fails on the third prong of plain error, we also would find no error. This court urges district courts to make detailed findings concerning each required element supporting an obstruction of justice enhancement based on perjury, but the *context* of the district court's statements may be taken into account during our review. *See Hawthorne*, 316 F.3d at 1146. And the context of the district court's statements cures any deficiency here. During his opening statement at trial, Chavarin admitted "this is not a case of who did it or how it was done." Aple. Br. at 6. The issue was "why he did it." *Id.* Whether or not Chavarin was actually coerced into trafficking these drugs bears directly on the reasons behind *why* Chavarin committed this offense. *See* U.S.S.G. § 3C1.1 cmt. n.6 (stating that any information "that, if believed,

14

would tend to influence or affect the issue under determination" is "material."). The false statements are plainly material.

## V.

We recognize that "[a]n automatic finding of untruthfulness, based on the verdict alone, would impinge upon the constitutional right to testify on one's own behalf." *United States v. Markum*, 4 F.3d 891, 897 (10th Cir. 1993) (citing another source). We are confident that did not occur here. Chavarin claimed he had no choice but to transport drugs, lest he endanger himself and his family. Independent of the jury verdict, the district court made findings where it emphasized it strongly believed Chavarin consciously gave false testimony concerning his duress defense. The district court properly applied the enhancement to safeguard the integrity of its proceedings. Accordingly, we AFFIRM the judgment of the district court.

Entered for the Court


Allison H. Eid
Circuit Judge